Robert A. CORNELLIER, Plaintiff-Appellant,

v.

AMERICAN CASUALTY COMPANY, Defendant-Appellee.

No. 184, Docket 31632.

United States Court of Appeals
Second Circuit.

Argued Nov. 21, 1967.

Decided Jan. 19, 1968.

Dwight W. Miller, Brattleboro, Vt., for plaintiff-appellant.

Fitts & Olson, Brattleboro, Vt., for defendant-appellee.

Before LUMBARD, Chief Judge, and MOORE and FEINBERG, Circuit Judges.

LUMBARD, Chief Judge:

Plaintiff appeals from orders of the District Court for Vermont which granted defendant's motion for summary judgment and denied plaintiff's motion for summary judgment in this diversity action for recovery under an accident insurance policy. The appeal presents the question whether the policy provision limiting coverage to losses occurring within 90 days of the accident precludes plaintiff from recovering for the loss of his foot in this case. We hold that the provision bars recovery by the plaintiff and we affirm the judgment below.

On October 30, 1964, plaintiff was struck by a motor vehicle and suffered severe injuries to his left leg. On the date of the accident there was in force an insurance policy issued by defendant to plaintiff which provided, *inter alia:*

> If injury, sustained by an Insured Person . . . shall result in any one of the following specific losses within ninety days after the date of accident, the Company will pay the [*following specified*] amount . . .
>
> \* \* \* \* \* \*
>
> One Hand or One Foot . . One-Half The Principal Sum
>
> \* \* \* \* \* \*
>
> "Loss" as above used means with reference to hand or foot, actual severance through or above the wrist or ankle joint.

The plaintiff's leg was amputated about five inches below the knee joint on July 16, 1965, over ninety days after the accident.

Plaintiff sued the insurance company to recover $12,500 under the policy for the loss of his foot. Defendant moved for summary judgment on the ground that the policy provided coverage only if the loss, defined as actual severance, occurred within ninety days; since it was undisputed that the amputation was performed more than ninety days after the accident, defendant claimed that the loss was not covered and that summary judgment should be granted for defendant.

Plaintiff also moved for summary judgment. According to plaintiff's theory, a loss within the meaning of the policy occurred within ninety days if within that time it had become apparent that amputation of the foot was required, even though the actual operation was postponed for medical reasons until after ninety days; the plaintiff submitted doctors' affidavits in support of his assertion that the necessity for amputating his foot was apparent from the

outset but that the amputation was delayed in order to save the knee joint and as much of the leg as possible. On this theory plaintiff claimed to be entitled to summary judgment. Alternatively, plaintiff argued that the 90-day limitation, if construed to require that the actual amputation occur within the 90-day period, was void as against public policy.

■ The district court denied plaintiff's motion and granted defendant's motion for summary judgment. Plaintiff now appeals from these orders. Clearly, the court was correct in denying the plaintiff's motion. Even if plaintiff's interpretation of the 90-day limitation were accepted, he is not entitled to summary judgment since the affidavits at most present an issue of fact as to when it became apparent that amputation was required.[1]

■ Defendant's motion was properly granted if the policy is interpreted as requiring that the actual amputation occur within ninety days. Under this construction of the policy, the factual issue as to when the decision to amputate was made is not relevant, and since it is undisputed that the severance occurred after ninety days, summary judgment for the defendant would be proper. Thus the questions are whether the provision must be read as limiting coverage to losses where amputation takes place within ninety days and whether the provision if so read is void as against public policy. This being a diversity case, these questions are governed by Vermont law.

■■ The policy provides that if an injury results in certain losses within ninety days of the accident, the company will pay a specified amount; the amount specified for the loss of a foot is one-half the principal sum. The same provision further states that loss as used above means, with reference to a foot, actual severance through or above the ankle joint. There appears to be no Vermont case construing such a provision. The provision unequivocally states that coverage is limited to cases where the foot is actually amputated within ninety days. Since the provision is unambiguous, there is no room for application of the principle that insurance contracts are to be construed strictly against the insurer. That principle does not permit a court to hold that the insured is covered despite a clear policy provision to the contrary; before the principle may be invoked there must be some ambiguity subject to alternative constructions, and we find none in the present provision.

Most courts of other jurisdictions which have ruled on such provisions have similarly held that the provisions are unambiguous. See, e. g., Clark v. Federal Life Ins. Co., 193 N.C. 166, 136 S.E. 291 (1927); Orenstein v. Preferred Acc. Ins. Co. of New York, 138 Minn. 10, 163 N.W. 747 (1917); Shelton v. Equitable Life Assurance Society of United States, 28 Ill.App.2d 461, 171 N.E.2d 787 (App.Ct.1961); see also Appleman, Insurance Law and Practice, § 612 at 472 and cases cited therein.[2]

1. The affidavits from plaintiff's doctors state that amputation was probable from the outset; while they might support a finding that the necessity for amputation was determined within ninety days, they do not conclusively establish this. Furthermore, the defendant submitted an affidavit by another physician which contested certain of plaintiff's assertions on this issue.

2. A few courts have held that provisions similar to that in the present case were ambiguous, since it was unclear whether the definition of loss as actual severance applied to the provision requiring that loss occur within ninety days as well as to

the provision stating that compensation would be paid for the loss of a foot; since the policy was found to be ambiguous, it was construed in favor of the insured. See Westenhover v. Life & Casualty Ins. Co. of Tenn., 27 So.2d 391 (La.Ct.App. 1946); Interstate Life & Accident Co. v. Waters, 213 Miss. 265, 56 So.2d 493 (1952); but see Martin v. Continental Casualty Co., 157 F.Supp. 259 (S.D.Miss. 1957). However, the particular language in those provisions is distinguishable from that involved in the case before us. In the present provision, the word "loss" is used only once, immediately preceding the phrase "within ninety

There remains the question whether the provision as so read violates the public policy of Vermont. Appellant contends that it does, in that it creates monetary considerations which might unduly interfere with the freedom of physicians to make decisions concerning their patients strictly on medical grounds.

In our opinion, the provision does not violate Vermont public policy. In ruling on this question, we must keep in mind that a court's power to invalidate contractual provisions as offensive to public policy is not exercised in every case in which the contract may seem to operate harshly on one of the parties. As a general rule, parties to a contract are bound by its provisions and an insured is entitled only to the coverage for which he contracted; it is not the function of a court to rewrite insurance policies so as to provide coverage which the court might have considered more equitable. Thus, the question is not whether the 90-day limitation in the present case results in a hardship to the plaintiff, but whether that provision is so unreasonable that it must be held contrary to the public interest and void.

We must also bear in mind that in a diversity case the federal courts are not free to develop their own notions of what should be required by the public policy of the state, but are bound to apply the state law as to these requirements. In the absence of any Vermont case passing on the validity of such a provision, we must estimate the course which the Vermont courts would follow in the present case.[3]

In other jurisdictions, courts have upheld similar provisions against attack on public policy grounds. See, e. g., Huffman v. Occidental Life Ins. Co. of Raleigh, 264 N.C. 335, 141 S.E.2d 496 (1965); Shelton v. Equitable Life Assurance Soc. of United States, supra; Clark v. Federal Life Ins. Co., supra; see also cases cited in Appleman, Insurance Law and Practice, § 612 at 468. We have been directed to no case where a court has invalidated on this ground a time limit such as that involved in the present case.[4] The Vermont courts, while not having ruled on this particular provision, have held that insurance policy limitations on the time within which suit must be brought are not offensive to public policy. See Schlitz v. Lowell Mutual Fire Ins. Co., 96 Vt. 334, 119 A. 516 (1923); Bates v. German Commercial American Accident Co., 87 Vt. 128, 88 A. 532 (1913). In view of these precedents, we find no basis for holding that Vermont would invalidate the provision in the present case as contrary to public policy.

It may be argued that it would be desirable for courts to exercise in the public interest a greater scrutiny over the fairness of restrictions in insurance policies, and it is possible that the Vermont courts would make such a departure from the traditional rulings upholding these restrictions. But the determination whether Vermont public policy requires such expanded intervention in this area is a matter peculiarly within the competence of the legislature or the courts of that state. In the absence of any indication that Vermont would in

---

days"; it would require an exceedingly strained interpretation of this contract to hold that the subsequent definition of "loss" did not apply to this part of the provision limiting coverage to losses occurring within ninety days.

3. The need for us to divine state law in this situation makes most attractive the Uniform Certification of Question of Law Act, under which a federal court can certify a question of state law to the highest court of the state. The Act was approved by the American Bar Association in August 1967. See 53 A.B.A.J.

976 (1967). Similar statutes have already been enacted in four states: Florida, Hawaii, Maine, and Washington. However, in the absence of a certification procedure we are called upon to predict what a Vermont court would do as best we can.

4. Those cases which have allowed plaintiff to recover despite such a time limitation have done so on the basis of the interpretation of an ambiguous provision, and not on the ground that the provision as otherwise read would be void as contrary to public policy. See fn. 2 supra.

fact follow such a course, a federal court ought not to undertake such an innovation in state law.

■ Since we read the policy as limiting recovery to cases where amputation occurs within ninety days, the factual issue as to when the decision to amputate was made is irrelevant. It is undisputed that the amputation was performed after the 90-day period had expired; therefore, there is no material issue of fact, and the court below properly granted summary judgment for the defendant.

The judgment of the district court is affirmed.