1998 ND 8

Darold D. MARTIN, Plaintiff
and Appellant,

v.

ALLIANZ LIFE INSURANCE COMPANY
OF NORTH AMERICA, The Legion-
naire Insurance Trust and the A.G.I.A.,
Inc., and the Life Insurance Company of
North America, Defendants and Appel-
lees.

Civil No. 970196.

Supreme Court of North Dakota.

Jan. 20, 1998.

Sara B. Gullickson (argued), and Paul E. Grinnell, Gunhus, Grinnell, Klinger, Swenson & Guy, Ltd., Fargo, for plaintiff and appellant.

Daniel L. Hull, Anderson & Bailly, Fargo, for defendants and appellees.

VANDE WALLE, Chief Justice.

[¶1] Donald D. Martin appealed from a Judgment entered after the Cass County District Court granted Defendant's Motion for Summary Judgment. We affirm.

## I

[¶2] On October 5, 1995, Donald D. Martin was involved in a serious motor vehicle collision in Tennessee. Initially, Martin was treated at the University of Tennessee Memorial Hospital. His most serious injury was a severe fracture dislocation of his lower left leg. Dr. David Reath, a Tennessee physician, noted in his medical report "[Martin] does have a chance at limb salvage although certainly ankle function will be severely decreased."

[¶3] At the end of October, Martin was transported by air ambulance to Dakota Heartland Hospital in Fargo. After weeks at Dakota Heartland, a local nursing home, and the Dakota Rehab Unit, Martin was discharged to his home in mid January. Throughout the initial hospitalization and rehabilitation, the viability of Martin's lower left leg was in question.

[¶4] Martin was readmitted to the hospital at the end of February. He underwent two surgeries and was discharged to nursing home care. On April 18, 1996, 196 days after the initial injury, Martin's lower left leg was amputated.

[¶5] Martin owned a group Accidental Death and Dismemberment Insurance policy offered through his membership in the American Legion. The group insurance policy was underwritten by Allianz Life Insurance Company of North America, the Legionnaire Insurance Trust, the A.G.I.A., Inc., and the Life Insurance Company of North America (collectively, Allianz). The Allianz policy included the following provisions:

**"WHEN BENEFITS ARE PAYABLE:**

Allianz Life will pay benefits when all of the following conditions have been met:

(1) The Member or Insured Dependent sustained an accidental bodily injury while his insurance under the Group Policy was effective.

(2) The injury, directly and independently of all other causes, resulted in a Covered Loss.

(3) *The Covered Loss occurred within 90 days after the injury was sustained.*

**COVERED LOSSES AND AMOUNT PAYABLE:**

The Principal Sum applicable to the Member and to each Insured Dependent is shown in the Schedule. When benefits are payable, Allianz Life will pay the percentage of the applicable Principal Sum for a Covered Loss as indicated below.

| Covered Loss | Percentage of Principal Sum Payable |
|---|---|
| * * * | |
| loss of one limb | 50% |
| * * * | |

If an insured person sustains more than one Covered Loss as a result of any one accident, the total amount payable for all Covered Losses shall never exceed his Principal Sum.

*Loss of a limb means severance at or above the wrist or ankle.* Loss of sight means total and irrecoverable loss of sight."

(Bold retained, emphases added).

[¶ 6] Martin filed a claim for accidental injury disability benefits. Allianz denied coverage because the severance of Martin's lower left leg did not occur within the 90 day period in the insurance contract.

[¶ 7] Martin filed this action, claiming breach of contract and bad faith. Allianz and Martin each filed motions for summary judgment. The district court found Martin's leg was not physically separated above the ankle until long after the 90–day limitation expired and granted Allianz's Motion for Summary Judgment.

## II

██ [¶ 8] On appeal, Martin claims the meaning of the word "severance" is ambiguous and should be interpreted to provide coverage because his leg was "functionally severed" following the collision. Martin also argues the 90–day contract limitation period is unreasonable and the district court erred

in dismissing his bad faith claim. "Summary judgment under N.D.R.Civ.P. 56 is appropriate ... if the only issues to be resolved are questions of law." *Security Nat. Bank, Edgeley v. Wald,* 536 N.W.2d 924, 926 (N.D. 1995). In the present case, all of Martin's arguments present questions of law.

### A. *Ambiguity of "Severance"*

██ [¶ 9] The legal effect of an insurance contract is a question of law. *Sellie v. North Dakota Ins. Guar. Ass'n,* 494 N.W.2d 151, 156 (N.D.1992). This Court reviews the district court's interpretation by independently construing and examining the insurance policy. *Id.* We look first to the language of the insurance contract. *Id.* If the policy language is clear on its face, there is no room for construction. *Id.* If coverage hinges on an undefined term, we apply the plain, ordinary meaning of the term in interpreting the contract. *Id.* at 156–57. *Cf. Aid Ins. Servs., Inc. v. Geiger,* 294 N.W.2d 411, 414–15 (N.D.1980) (stating "[i]nsurance policies should be written so [ ] an ordinary layperson, untrained in the field of insurance, can clearly understand them and know whether or not coverage is afforded"). Although insurance policies are contracts of adhesion, and we resolve ambiguities in favor of the insured, *Kief Farmers Co-op. Elevator v. Farmland,* 534 N.W.2d 28, 32 (N.D.1995), we will not strain the definition to provide coverage for the insured. *Link v. Federated Mut. Ins. Co.,* 386 N.W.2d 897, 900 (N.D. 1986) (refusing to strain the language of a multi-peril policy to cover theft of cash from a business); *Aid Ins. Servs., Inc.,* 294 N.W.2d at 414.

██ [¶ 10] A "covered loss" under the Allianz policy includes "loss of a limb." "Loss of a limb means *severance at or above the wrist or ankle.*" (Emphasis added). Martin claims the term "severance" is ambiguous because it could mean "physical severance" or "functional severance." A contract term is ambiguous when it can have at least two alternative meanings. *Kief Farmers,* 534 N.W.2d at 32. In the present case Martin's argument "jumps the gun" on contract interpretation by suggesting an ambiguity

exists, and should be resolved in his favor, without first looking to the plain meaning of the term "severance." *Walle Mut. Ins. Co. v. Sweeney*, 419 N.W.2d 176, 178 (N.D.1988) (interpreting Chapter 9–07, N.D.C.C., as requiring other rules of interpretation to fail before ambiguities are held against the drafter, N.D.C.C. § 9–07–19). "[M]ost courts agree [ ] the phrase 'severance at or above' contemplates substantially complete physical, as contrasted with functional, loss of a member." J.L. Isham, Annotation, *Accident Insurance: What is "Loss" of a Body Member*, 51 A.L.R.4th 156, 164.

■ [¶ 11] Neither "physical" nor "functional" appears in the Allianz insurance contract. We will not add these words to the contract to create an ambiguity because they do not define, but rather modify, the true contract term, "severance." Adding words to a contract in order to create an ambiguity violates the purpose of contract interpretation. *Cf. Kief Farmers*, 534 N.W.2d at 36 (refusing to rewrite an insurance contract to exclude coverage). An action for reformation is the appropriate legal vehicle for the judicial redrafting of a contract. *Ell v. Ell*, 295 N.W.2d 143 (N.D.1980). *Cf. Link*, 386 N.W.2d at 900 (refusing to strain the insurance contract language or create an ambiguity merely to side with the insured).

■ [¶ 12] Where a term is undefined in the contract we usually look to its clear, ordinary meaning. N.D.C.C. § 9–07–09. *But see Walle Mut. Ins. Co.*, 419 N.W.2d at 181 (VandeWalle, J., concurring specially) (stating complex insurance contracts are not viewed as simply as any other contracts). The ordinary meaning is the definition a non law-trained person would attach to the term. *Cf. Kief Farmers*, 534 N.W.2d at 32. "Severance" is defined as "[t]he act or process of severing ... [t]he condition of being severed ... [s]eparation; partition." *The American Heritage College Dictionary* 1248 (3d ed.1997). "Sever" means "[t]o set or keep apart; divide or separate ... [t]o cut off (a part) from a whole...." *Id.* We believe the term severance means what it says; that is, where a member is separated or taken apart from the rest of the body. The "functional severance" or immobility of Martin's leg following the collision is not within the plain meaning of severance and does not invoke the Allianz dismemberment coverage.

[¶ 13] In this case, the "plain meaning" and the "complex" or "legal meaning" of the word "severance" are in agreement. *See Walle Mut. Ins. Co.*, 419 N.W.2d at 181 (VandeWalle, J., concurring specially) (stating it is naive to conclude "this court views a complex contract of insurance as simply as it would any other contract"). Most courts hold the term severance is unambiguous. *See, e.g., Travelers Ins. Co. v. Burchett*, 841 F.2d 155, 157 (6th Cir.1988) (holding the term "severance" is unambiguous and means actual physical severance), *Reid v. Life Ins. Co. of N. Am., Inc.*, 718 F.2d 677, 680–82 (4th Cir. 1983) (holding severance clearly and unambiguously requires an actual cutting off of the member at the place indicated), *Cornellier v. American Casualty Co.*, 389 F.2d 641, 643 (2d Cir.1968) (noting most courts have found provisions using the term severance to be unambiguous).

[¶ 14] In *Perrilloux v. First Standard Life Ins. Co.*, a case closely in line with the facts of this case, the plaintiff's left leg was injured in a motorcycle collision. 396 So.2d 427 (La. Ct.App.1981). Some 166 days later, long after the 90–day contractual limitation period, the plaintiff's leg was amputated. *Id.* On appeal, the plaintiff argued the loss of his leg should be covered because he lost functional use of the leg immediately following the collision. *Id.* at 428. The Louisiana court noted,

" 'the overwhelming weight of authority is to the effect that, where an insurance policy provides indemnity for the 'loss of a hand', or the 'loss of a foot', or the 'loss of an arm', and provides in the policy a definition or a specific statement as to what shall constitute a loss of such member, effect must be given to this qualifying definition or explanation.'

\*   \*   \*   \*   \*   \*

"We conclude there is no ambiguity in the contractual provisions defining loss and the time limitation within which coverage is afforded. [The insurer] had the contractual right to restrict its liability...."

*Id.* at 429–30 (Quoting in first part *Muse v. Metropolitan Life Ins. Co.,* 193 La. 605, 192 So. 72 (1939)).

[¶ 15] In the present case Martin was covered by a group policy with the title "ACCIDENTAL DEATH & DISMEMBERMENT INSURANCE." To conclude the definition of "severance" is somehow broader than the main "dismemberment" title would turn the typical insurance contract on its head. From our observations it is typical for the initial portions of an insurance contract to describe in broad terms the coverage provided with the limitations appearing later, in the "small print." This Court construes insurance policies as a whole to give meaning to each word and phrase. *Symington v. Walle Mut. Ins. Co.,* 1997 ND 93, ¶ 17, 563 N.W.2d 400. Thus, we would ordinarily consider insurance contract titles as descriptive of the coverage provided. *See, e.g., Id.* and *Kief Farmers,* 534 N.W.2d at 32 (stating "[w]e consider whether a person not trained in the law or in the insurance business can clearly understand the language"). *Compare Stanley v. Safeco Ins. Co. of America,* 109 Wash.2d 738, 747 P.2d 1091, 1094 (1988) (Durham, J., dissenting) (noting the heading is part of the contract and informs the average person purchasing insurance of the type of coverage provided). A "DEATH AND DISMEMBERMENT INSURANCE" title describes a policy providing coverage in case the insured dies or loses a member of his body. Neither happened here within the 90–day limitation period.

[¶ 16] Under North Dakota law, "[a]n agreement which is essentially a 'contract of adhesion' should be examined with special scrutiny by the courts to assure [ ] it is not applied in an unfair or unconscionable manner against the party who did not participate in its drafting." *Farmers Union Grain Terminal Ass'n v. Nelson,* 223 N.W.2d 494, 497 (N.D.1974). Although we give adhesion contracts "special scrutiny" that does not mean we will strike out a term in the contract in order to provide coverage for the insured. *See Link,* 386 N.W.2d at 900. Denying coverage on the basis of a contract term may appear unduly harsh, but straining the language of an insurance policy to favor the insured would do greater harm to the public interest by creating uncertainty in an otherwise unambiguous contract.

[¶ 17] We conclude the district court was correct in granting summary judgment in favor of Allianz because "severance" of Martin's leg did not occur within the 90–day limitation period.

B. *Unreasonableness of 90–Day Limitation*

[¶ 18] Martin argues the 90–day contract limitation period is unreasonable and against public policy because it requires the insured to chose between losing a savable limb or taking the insurance proceeds. There is authority holding similar limitation periods unenforceable. *Strickland v. Gulf Life Ins. Co.,* 240 Ga. 723, 242 S.E.2d 148, 149, 152 (1978) (reversing so the trial court can fully consider public policy issues and framing the issue as a "gruesome choice" between collecting insurance proceeds or cutting off ones leg). However, the vast majority of cases have upheld such limitation periods when challenged as unreasonable, unconscionable, or against public policy. *See Hawes v. Kansas Farm Bureau,* 238 Kan. 404, 710 P.2d 1312, 1316–17 (1985) (citing 17 cases holding 90–day limitations periods not unconscionable and 2 cases holding such provisions invalid on public policy grounds), and Laurent B. Frantz, Annotation, *Validity and Construction of Provision in Accident Insurance Policy Limiting Coverage For Death or Loss of Member to Death or Loss Occurring Within Specified Period After Accident,* 39 A.L.R.3d 1311, 1313 (noting similar limitation clauses have been uniformly upheld when attacked as unreasonable, unconscionable, or against public policy).

[¶ 19] In *Cornellier v. American Casualty Co.,* the plaintiff made a similar public policy argument. 389 F.2d at 642. In that case the plaintiff was struck by a vehicle and suffered severe injuries to his left leg. *Id.* The American Casualty insurance contract contained a 90–day limitation period. *Id.* The plaintiff's leg was amputated over 90 days after the accident. *Id.* Interpreting Vermont state law in a federal diversity case, the court noted:

"In ruling on this question, we must keep in mind [ ] a court's power to invalidate contractual provisions as offensive to public policy is not exercised in every case in which the contract may seem to operate harshly on one of the parties. As a general rule, parties to a contract are bound by its provisions and an insured is entitled only to the coverage for which he contracted; it is not the function of a court to rewrite insurance policies so as to provide coverage which the court might have considered more equitable. Thus, the question is not whether the 90–day limitation in the present case results in a hardship to the plaintiff, but whether that provision is so unreasonable [ ] it must be held contrary to the public interest and void."

*Id.* at 644.

[¶ 20] In *Johnson v. Peterbilt of Fargo, Inc.*, 438 N.W.2d 162, 163–164 (N.D. 1989) we said:

"Public policy, with respect to contract provisions, is a principle of law whereby a contract provision will not be enforced if it has a tendency to be injurious to the public or against the public good. *Ness v. Fargo*, 64 N.D. 231, 251 N.W. 843 (1933). Whether a particular provision is against public policy is generally provided for by statute or by the State Constitution. However, when a contract provision is inconsistent with fair and honorable dealing, contrary to sound policy and offensive to good morals, courts have the authority to declare the provision void as against public policy. Sec. 9–08–01, N.D.C.C. *See also* [sic] *Mees v. Grewer*, 63 N.D. 74, 245 N.W. 813 (1932)."

But when a court is faced with deciding whether a contract is against public policy, it must be mindful of the right of individuals, in this case an association, the American Legion, to enter into a contract. *Id.* at 164. Although agreements will not be enforced if they are injurious to the public or against the public good, N.D.C.C. § 9–08–01, *Muscatell v. North Dakota Real Estate Comm'n*, 546 N.W.2d 374, 378 (N.D.1996), if this matter is one for which a public policy should be announced, the legislative branch is much better suited than the courts to set the public policy of the State. *See Downtowner, Inc. v. Acrometal Products, Inc.*, 347 N.W.2d 118, 124 (N.D.1984) (noting the legislature "can do studies, gather evidence, hold hearings, and come to a decision" and "broad public policy issues are best handled by legislatures with their comprehensive machinery for public input and debate" (citations and quotations omitted)).

[¶ 21] We do not believe the 90–day limitation period is so unreasonable as to be contrary to the public interest of North Dakota. While the limitation period may appear to present the insured with the "gruesome choice" of collecting the insurance proceeds or cutting off his leg, the nature of death and dismemberment insurance is to provide coverage in gruesome situations.

[¶ 22] Citing *Strickland*, 242 S.E.2d at 152, Martin claims today's medical advancements make a 90–day limitation period unreasonable because there is a greater possibility of saving the limb. While medical science has advanced, the advancement does not immediately change the terms of a contract. If policy holders prefer a longer limitation period than 90 days, the competitive insurance market is better positioned than are the courts to react to advancements in medical science.

[¶ 23] We are not willing to head down the slippery slope of holding a 90–day limitation unreasonable. Such a conclusion begs the question: What is reasonable?; 91 days?; 92 days?; 100? "[T]here has always been and there always will be those who will die [or are dismembered] on the 89th day following the injury and those who will die [or are dismembered] on the 91st day following an injury." *Hawes*, 710 P.2d at 1318. Whether or not the 90–day limitation is a number arbitrarily selected by the insurer, a court-picked number would be just as arbitrary and defeat the expectations of contracting parties.

[¶ 24] The district court correctly granted summary judgment because Martin's leg was not severed within the 90–day limitation period.

## C. *Bad Faith Claim*

[¶ 25] Martin claims Allianz acted in bad faith in denying coverage. "A bad faith claim against an insurance company requires the breach of a duty." *Isaac v. State Farm Mut. Auto. Ins. Co.,* 547 N.W.2d 548, 551 (N.D.1996). We need not consider the dismissal of Martin's bad faith claim because, in light of our holding in this case, there was a reasonable basis for denial of policy benefits.

## III

[¶ 26] Accordingly, we hold the district court did not err in granting summary judgment in favor of Allianz because Martin's leg was not severed within the reasonable 90–day contract limitation period.

[¶ 27] We affirm.

[¶ 28] SANDSTROM, NEUMANN, MARING and MESCHKE, JJ., concur.