# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 98-2031

———————

Marvin Jurrens,            *
                           *
         Appellant,        *
                           *   Appeal from the United States
   v.                      *   District Court for the
                           *   District of South Dakota
Hartford Life Insurance Co. *
                           *
         Appellee.         *

———————

Submitted:   February 10, 1999

Filed:   August 19, 1999

———————

Before McMILLIAN, JOHN R. GIBSON and MURPHY, Circuit Judges.

———————

McMILLIAN, Circuit Judge.


Marvin Jurrens appeals from a final order entered in the United States District Court[1] for the District of South Dakota granting summary judgment in favor of Hartford Life Insurance Co. (Hartford) in this action to recover insurance benefits under an accidental death and dismemberment policy (the Hartford policy). See Jurrens v. Hartford Life Ins. Co., No. CIV 96-1048 (D.S.D. Mar. 6, 1998) (hereinafter "slip op.").

———————

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

For reversal, Jurrens argues that the district court erred in holding that, in light of certain facts not genuinely disputed, the surgical amputation of the lower part of his right leg was not a covered loss under the clear and unambiguous terms of the Hartford policy. In the alternative, Jurrens argues that the Hartford policy, as construed by the district court, is void on public policy grounds. For the reasons stated, we affirm the order of the district court.

## Jurisdiction

Jurisdiction was proper in the district court under 28 U.S.C. §§ 1332 and 1441(a). Jurisdiction is proper in this court under 28 U.S.C. § 1291. The notice of appeal was timely filed pursuant to Fed. R. App. P. 4(a).

## Background

The following summary of the background is based upon the district court's statement of facts and evidence in the record on appeal. In February 1992, Jurrens opened a checking account at a bank in Watertown, South Dakota, which offered free limited accidental death and dismemberment insurance as a bonus to new account holders. Jurrens was sent a form to enroll in the insurance, which he filled out and returned to the third-party administrator of the plan, Kevlin Services, Inc. (Kevlin), according to the instructions provided. He also elected to increase the benefits at an additional cost. To pay the premiums, he authorized the bank to make automatic deductions from his bank account. At all relevant times, Jurrens continued to pay the monthly premiums.

The insurance coverage commenced on April 1, 1992. Jurrens initially received a certificate of insurance from the Boston Mutual Insurance Company. On January 1, 1994, he was issued a second certificate of insurance from Hartford. The certificate from Hartford purports to supersede the first certificate and bears the statement:

"Effective Date of Coverage  April 1, 1992."  <u>See</u> Joint Appendix at 14 (copy of certificate of insurance).

The Hartford certificate of insurance contains the following terms:

> Loss resulting from a) sickness or disease, except a pus-forming infection which occurs through an accidental wound; or b) medical or surgical treatment of a sickness or disease; is not considered as resulting from injury.
>     . . . .
>      ACCIDENTAL DEATH AND DISMEMBERMENT BENEFIT
> If a Covered Person's injury results in any of the following losses within 365 days after the date of the accident; we will pay the sum shown opposite the loss.
>     . . . .
> Loss means with regard to:
> a) hands and feet, actual severance through or above wrist or ankle joints.

<u>Id.</u>

Jurrens did not receive a separate insurance policy from Hartford or from Kevlin, the third-party administrator; nor was he provided any information regarding how or where the actual insurance policy could be inspected.  The district court thus held, and the parties do not dispute, that the certificate of insurance is the written contract to which the parties were bound.  (Accordingly, all references to "the Hartford policy" in this opinion are based upon the language of the certificate of insurance.)

In January 1993, a trailer hitch fell on Jurrens's right foot, injuring a toe.  Jurrens did not seek medical attention at that time.  On March 26, 1993, Jurrens went to see Dr. Todd Monroe, a podiatrist, for discomfort in the same toe, believing the discomfort was the result of an ingrown toe nail.  Dr. Monroe trimmed the toe nail.  On May 5, 1993, Jurrens returned to Dr. Monroe, who, the same day, determined that there was

an infection in the toe. On December 7, 1993, due to the infection, Jurrens underwent surgery to remove part of his right foot. On April 6, 1994, again due to the infection, his right leg was surgically amputated just below the knee. Jurrens had pre-existing conditions of diabetes and poor circulation.

Jurrens thereafter sent a claim for accidental dismemberment benefits to Kevlin, which in turn forwarded his claim to Hartford. Hartford rejected the claim, and Jurrens filed suit in South Dakota state court to recover the benefits. Hartford removed the case to federal district court and then moved for summary judgment. Hartford argued that (1) it was not "on the risk" because its policy did not become effective until January 1, 1994, and (2), even if it were on the risk, Jurrens could not recover benefits under the Hartford policy because the loss did not occur "within 365 days of the accident," as required under the policy terms.

Jurrens opposed Hartford's motion for summary judgment. In support of his opposition, Jurrens submitted an expert witness report prepared by Dr. Monroe, which stated:

> It is my opinion that the trauma to his toe on January 3, 1993 was the causative factor of the bacterial infection that developed. Marvin's previously existing circulation and diabetes problems impaired his body's ability to resist the bacterial infection eventually leading to the ultimate amputation of his leg.

See Joint Appendix at 214-15 (expert witness report of Dr. Todd Monroe, filed pursuant to Fed. R. Civ. P. 26(a)(2)(b)).

Upon review, the district court rejected Hartford's argument that it had no exposure to liability because the Hartford policy was not in effect until January 1, 1994.

Slip op. at 4.[2]  However, the district court further held that, under the clear and unambiguous terms of the Hartford policy, Jurrens could not recover benefits as a matter of law. The district court reasoned:

> The language is clear.  There is no coverage for any sickness or disease, such as diabetes.  There is no coverage for any infection unless the infection occurs through an accidental wound.  That is exactly what happened here.  Dr. Monroe said so in unequivocal terms in his report (Doc. #9) and there is nothing else in the record to cause this to be a factual issue.  Jurrens himself, in his claim form, traces the ultimate amputation to the trailer hitch injury, obviously thought by Jurrens to be a minor injury at the time.

Id.  In other words, the district court determined that it could not genuinely be disputed that the trailer hitch incident, which occurred in January 1993, was the accident which led to Jurrens's leg amputation on April 6, 1994.  Therefore, the district court concluded, the covered loss occurred more than 365 days after the date of the accident and Jurrens could not recover benefits under the Hartford policy as a matter of law. The district court granted summary judgment for Hartford, and this appeal followed.

## Discussion

We review a grant of summary judgment *de novo*.  The question before the district court, and this court on appeal, is whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See

---

[2]The district court also held that Hartford  had produced false and misleading documents in an attempt to avoid exposure to liability and that, because "either gross negligence or perjury had occurred," sanctions against Hartford were warranted under Fed. R. Civ. P. 11.  See Jurrens v. Hartford Life Ins. Co., No. CIV 96-1048, slip op. at 3-4 (D.S.D. Mar. 6, 1998).

Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). We apply the law of South Dakota in this diversity case, and we review the district court's determinations of South Dakota law *de novo*. See Salve Regina College v. Russell, 499 U.S. 225, 231 (1991). Construction of a written insurance contract is a question of law. See Olson v. U.S. Fidelity & Guar. Co., 549 N.W.2d 199, 200 (S.D. 1996) (Olson). If the South Dakota Supreme Court has not spoken on a particular issue of law, "we must attempt to predict what that court would decide if it were to address the issue." Lindsay Mfg. Co. v. Hartford Accident & Indem. Co., 118 F.3d 1263, 1268 (8th Cir. 1997). "'In making our prediction, we may consider relevant state precedent, analogous decisions, considered dicta, . . . and any other reliable data.'" Id. (quoting Ventura v. Titan Sports, Inc., 65 F.3d 725, 729 (8th Cir. 1995), cert. denied, 516 U.S. 1174 (1996)).

Jurrens first argues that the district court erred in holding on summary judgment that the partial amputation of his right leg was not a covered loss under the clear and unambiguous terms of the Hartford policy. More specifically, Jurrens maintains that the district court erred in holding that, under the clear and unambiguous terms of the Hartford policy, the January 1993 trailer hitch incident was the "accident" which caused his loss. Jurrens argues that the Hartford policy is vague and ambiguous and must be construed in his favor. As set forth above, the Hartford policy provides that "[l]oss resulting from a) sickness or disease, except a pus-forming infection which occurs through an accidental wound . . . is not considered as resulting from injury." The Hartford policy further provides that benefits will be paid to compensate for a covered loss – including actual severance of a foot above the ankle joint[3] – if "injury results in any of the [covered] losses within 365 days after the date of the accident." Jurrens notes that the Hartford policy contains no definition of "accident," nor is there a list of

_____

[3]There is no genuine dispute that Jurrens's partial leg amputation on April 6, 1994, resulted in a covered loss, while his partial foot amputation on December 7, 1993, did not.

-6-

what is considered to be, or not to be, an "accident." Thus, he argues, the development of the *infection* could arguably be viewed as the relevant "accident" under a reasonable interpretation of the Hartford policy. Because the infection was not discovered until May 5, 1993, and his leg surgery took place on April 6, 1994, he maintains that a jury could reasonably determine that his injury resulted in a covered loss within 365 days after the date of the "accident." For the reasons stated below, we cannot agree.

There is certainly no dispute that, in order for Jurrens to receive the insurance benefits, the covered loss had to have resulted from an "accident" *and* it had to have occurred within 365 days after the "accident." Although diabetes and poor circulation apparently contributed to Jurrens's devastating infection, those conditions are not relevant to the present inquiry because it is clear from the language of the Hartford policy that losses resulting from sickness or disease are not covered. Jurrens's own expert witness, Dr. Monroe, opined that the trailer hitch incident was "*the causative factor* of the bacterial infection that developed." Joint Appendix at 214 (emphasis added). Dr. Monroe further indicated that "the bacterial infection eventually led to the ultimate amputation of [Jurrens's] leg." Id. In light of this uncontradicted evidence – provided by Jurrens's own expert witness – we hold that there is no genuine dispute that the trailer hitch incident caused the infection that led to the amputation of Jurrens's leg.

As noted above, Jurrens nevertheless argues that the occurrence of the *infection* could arguably be viewed as the relevant "accident" under the Hartford policy. Although we find no South Dakota law precisely on point, we are of the opinion that the South Dakota Supreme Court would hold that – in these circumstances where an accidental injury led to medical complications which in turn led to the covered loss – the "accident" is the event that caused the original injury, not the later development of medical complications. Accord Orenstein v. Preferred Accident Ins. Co., 163 N.W. 747 (Minn. 1917) (Orenstein) (denying benefits under Minnesota law where accident insurance contract provided benefits for covered losses, including loss of foot,

occurring "within 90 days from the date of the accident" and the plaintiff underwent foot amputation more than 90 days after the original accidental injury but less than 90 days after the onset of infection).

Moreover, under South Dakota law, the rule of construction which favors the insured where the language of the insurance contract is ambiguous "does not mean, however, that the court may seek out a strained or unusual meaning for the benefit of the insured." Olson, 549 N.W.2d at 200 (quoting Rogers v. Allied Mut. Ins. Co., 520 N.W.2d 614, 616 (S.D. 1994)). To say that the infection, rather than the trailer hitch incident, was the "accident" which caused Jurrens's leg amputation would, we believe, require the use of a "strained or unusual meaning" of the word "accident." Accord Orenstein, 163 N.W. at 748 ("it is plain that the loss of the foot must have occurred within 90 days after the accidental injury . . . . The language is so definite and clear in this respect that there is no room for construction.").

In sum, we hold that the January 1993 trailer hitch incident is the only relevant "accident" for purposes of determining Jurrens's entitlement to the insurance benefits under the clear and unambiguous terms of the Hartford policy. Because it is undisputed that Jurrens's covered loss did not occur within 365 days after the date of that accident, he cannot recover the insurance benefits as a matter of law.

Jurrens alternatively argues that it is unconscionable and against public policy to construe the Hartford policy as excluding coverage in the present case. He urges this court to hold that the exclusionary terms of the policy are void and unenforceable.

Even though it appears that Jurrens did not assert this public policy argument in the district court, we now dispose of the issue on the merits. The basis for arguing that the limitation at issue is against public policy is the argument that, by imposing a deadline for an insured to suffer a dismemberment in order to get benefits, an insured

or an insured's doctor may be put in the position of having to elect an amputation (perhaps prematurely or even unnecessarily) in order to avoid losing the benefits.

In Cornellier v. American Cas. Co., 389 F.2d 641 (2d Cir. 1968), a case governed by Vermont law, the plaintiff made a similar public policy argument with respect to an insurance policy which required the covered loss to occur within ninety days of the accident. In considering the public policy issue, the Second Circuit stated:

> As a general rule, parties to a contract are bound by its provisions and an insured is entitled only to the coverage for which he contracted; it is not the function of a court to rewrite insurance policies so as to provide coverage which the court might have considered more equitable. Thus, the question is not whether the 90-day limitation in the present case results in a hardship to the plaintiff, but whether that provision is so unreasonable that it must be held contrary to the public interest and void.

389 F.3d at 644. The Second Circuit concluded that the Vermont courts would not, on the basis of public policy, invalidate the challenged limitation. See id. (citing cases).

More recently, in Martin v. Allianz Life Ins. Co., 573 N.W.2d 823, 827-28 (N.D. 1998) (Martin), the North Dakota Supreme Court thoroughly reviewed the law of other jurisdictions on the very same public policy issue (again, with respect to a ninety-day limitation) and declined to hold that the limitation at issue was so unreasonable as to be void and unenforceable. The North Dakota Supreme Court noted that the "vast majority" of cases have upheld similar ninety-day time limitations in this type of insurance policy. Id. at 827. The North Dakota Supreme Court then explained:

> We are not willing to head down the slippery slope of holding a 90-day limitation unreasonable. Such a conclusion begs the question: What

is reasonable?;  91 days?;  92 days?;  100?  "There has always been and there will always be those who will die [or are dismembered] on the 89th day following the injury and those who will die [or are dismembered] on the 91st day following an injury."  Whether or not the 90-day limitation is a number arbitrarily selected by the insurer, a court-picked number would be just as arbitrary and defeat the expectations of contracting parties.

Id. at 828 (quoting Hawes v. Kansas Farm Bureau, 710 P.2d 1312, 1318 (Kan. 1985)).

While we find the public policy argument compelling, we also recognize that there is a public interest in allowing insurers to impose reasonable limitations on their risks and in upholding such limitations when agreed upon by contracting parties.  The 365-day limitation at issue in the present case is considerably less harsh than the ninety-day limitations upheld in Cornellier and Martin.  Upon careful consideration, we believe that the South Dakota Supreme Court would hold that the 365-day limitation imposed by Hartford to limit its risk is not so unreasonable for this type of insurance as to be against the public interest and unenforceable.

## Conclusion

For the foregoing reasons, the order of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.