# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3910

_____

R.D. Offutt Company,　　　　　　　　*
　　　　　　　　　　　　　　　　　　*
　　　　　　Plaintiff - Appellee,　　 *
　　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　v.　　　　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　　　*　District of North Dakota.
Lexington Insurance Company,　　　　 *
　　　　　　　　　　　　　　　　　　*
　　　　　　Defendant - Appellant.　　*

_____

Submitted:　June 11, 2007
Filed: July 17, 2007

_____

Before MURPHY, BEAM, and SHEPHERD, Circuit Judges.

_____

MURPHY, Circuit Judge.

After the Lexington Insurance Company declined to cover expenses incurred by its policyholder R.D. Offutt Company due to a switchgear failure, Offutt brought this declaratory judgment and breach of contract action. The district court[1] granted Offutt's motion for summary judgment and awarded it attorney fees, and Lexington appeals. We affirm.

_____

[1]The Honorable Ralph R. Erickson, United States District Judge for the District of North Dakota.

I.

R.D. Offutt Company is a Minnesota corporation whose principal place of business in is Fargo, North Dakota. It owns properties in various states, including a 93,000 acre parcel of farmland near the Columbia River in Morrow County, Oregon. Because Offutt manages this property through Threemile Canyon Farms, LLC, a wholly owned subsidiary, the property is referred to as Threemile. Offutt leases to various third party tenants on a long term basis. The tenants use the land to grow crops such as potatoes, alfalfa, onions, wheat, and corn which require irrigation to sustain them. Under the leases Offutt has entered into with its tenants, it is obligated to provide them with water between March 20 and October 19 of every year and must indemnify them against all liabilities, losses, and damage incurred due to any failure to satisfy its obligations as lessor.

On June 29, 2002 there was a switchgear failure at a water pumping station at Threemile. That pumping station takes water from the Columbia River and directs it to the farmland for crop irrigation and other purposes. The switchgear controlled the supply of electricity to the pump, and its failure cut pumping capacity in half. Jimmy Brewer, the farm manager at Threemile, testified in his deposition that if the failure had not been addressed immediately, crops would have died and Offutt would have faced liability claims from its tenants. There is also evidence that without irrigation Offutt would have been liable to governmental agencies for wind erosion and airborne dust.

Offutt determined within the 48 hour period following the switchgear failure that permanent replacement of the switchgear would take weeks or even months. In order to maintain the pumping station's full capacity in the meantime, Offutt's manager rented portable generators and bought diesel fuel to supply them. Jimmy Brewer testified that these measures were taken to prevent crop loss and liabilities to tenants. Offutt spent $264,642.61 on the generators, fuel, and related labor and freight charges.

Offutt had purchased insurance for Threemile from Lexington, a Delaware corporation. Its policy covered "all risk of direct physical loss or damage" to "all real and personal property" at Threemile which Offutt owned, used, leased, or intended for use. The policy provided that in the event of loss or damage, Lexington would consider Offutt the "sole and unconditional owner" of covered property, notwithstanding any contracts or leases to the contrary. In addition to physical loss or damage, the policy insured against losses resulting from business interruptions and extra expenses caused by property damage. Under its expediting expense clause, the policy covered "the reasonable extra cost of temporary repair and/or replacement and/or expediting the repair and/or replacement of damaged property insured hereunder." "[L]oss or damage to . . . [g]rowing crops" was specifically excluded from coverage. Coverage extended from August 1, 2001 to August 1, 2002.

After the switchgear failure caused Offutt to incur expenses, it submitted a claim to Lexington for its costs in renting generators and purchasing fuel as well as in permanently replacing the failed switchgear with a new one. Lexington paid Offutt $628.262.35 to indemnify it for its costs in permanently replacing the switchgear, but it declined to cover the expenses related to the generators and diesel fuel. Lexington asserted that these expenses were not covered under the policy because they had been incurred to save the crops growing at Threemile. Offutt then brought this case in the District of North Dakota. Its complaint sought declaratory relief and alleged breach of the insurance contract and bad faith denial of coverage. After discovery, both parties moved for summary judgment.

The district court, applying the law of North Dakota,[2] concluded that the contract's expediting expense clause allowed for a temporary replacement for damaged property and that the fuel and generator rental costs were covered. The district court also concluded that the policy contemplated that covered property such as the switchgear had value for the function it performed in addition to its value as a

---

[2]Neither party challenges the district court's choice of law.

piece of property. The policy provision on expediting expenses therefore applied to both the cost of temporarily replacing the switchgear's function and the cost of permanently replacing it. Because the rented generators and purchased fuel replaced the switchgear's function of powering the water pump, the expediting expense clause covered the costs incurred in obtaining them. The district court decided that the policy's growing crops exclusion did not apply because it barred coverage for physical loss or damage to crops, not for costs incurred to replace covered property in order to save or protect crops. The court granted declaratory relief and summary judgment to Offutt on the contract. It also granted summary judgment to Lexington on Offutt's claim of bad faith on the theory that the question of coverage was reasonably debatable. Offutt has not appealed that ruling, and the bad faith claim is not at issue on this appeal.

Offutt then moved for an award of attorney fees, citing North Dakota case law which allows the insured to recover attorney fees in a declaratory judgment action between the insurer and insured. Lexington opposed the motion, arguing that the district court should not use its discretion to grant fees, pointing out that the insurance policy did not provide for recovery of attorney fees and that Lexington's good faith weighed against a fee award. The district court concluded that the North Dakota Supreme Court cases in which the insured was awarded attorney fees were indistinguishable from the present case and that fees should be awarded. It further determined that Offutt should not receive fees for time spent on its unsuccessful bad faith claim. It therefore awarded fees in the amount of $26,093.25, representing the time Offutt's attorneys had spent on the case other than on the bad faith claim.

Lexington now appeals the grant of summary judgment and the award of attorney fees. It argues that the district court erred in concluding that the policy covered the generator and fuel costs which Offutt incurred. It claims the expediting expense clause only covered temporary replacement of the damaged switchgear with another. Further, the expenses are excluded from coverage because the policy does not cover loss or damage to growing crops or liabilities incurred to third parties.

Lexington also argues that the district court abused its discretion by awarding attorney fees to Offutt since its denial of coverage had a reasonable basis. It contends in addition that Offutt's declaratory judgment action is only piggybacked on its breach of contract claim which would not allow recovery of fees.

Offutt responds that it does not seek recovery for damage to growing crops, but rather for its expenses in replacing covered property. It contends that the plain language of the growing crops exclusion and the expediting expense clause demonstrate that the generator and fuel costs are not excluded but covered by the policy, asserting that its motive to avoid crop loss and liability to third parties is irrelevant. It also argues that the award of attorney fees was proper under North Dakota law.

II.

We review a grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party; summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Allianz Ins. Co. of Can. v. Sanftleben, 454 F.3d 853, 855 (8th Cir. 2006). We also review de novo a district court's interpretation of an insurance contract. Id.

Lexington maintains that the district court erred in its grant of summary judgment to Offutt. Its first argument is that the expenses Offutt incurred by renting generators and purchasing fuel are not covered by the expediting expense clause. It does not argue that the claimed expenses are unreasonable, but rather that they do not qualify as expediting expenses at all. According to Lexington, the rented generators and diesel fuel did not temporarily repair or replace the switchgear within the meaning of the expediting expense clause. Lexington asserts that "replacement" is a term of art limited to replacements of "like-kind equality." If Offutt had temporarily replaced the damaged switchgear with a working one, the policy would have covered the

expense. But rather than immediately replacing the switchgear, Lexington says, Offutt rented generators and bought fuel. These expenses were unrelated to the switchgear itself and are thus not covered by the policy. Lexington has already fully indemnified Offutt for the replacement switchgear. To support its arguments, Lexington relies on <u>Detroit Edison Co. v. Protection Mutual Insurance Co.</u>, 134 F.3d 790 (6th Cir. 1998).

Offutt responds that while the generators and fuel did not physically replace the switchgear, they did replace its function and are therefore covered by the policy. It also points out that the language of the policy in <u>Detroit Edison</u> was significantly different from the policy here and that each case must turn on its own facts.

In <u>Detroit Edison</u>, a power company's electrical transformers and underground cables failed. In order to prevent the power plant from shutting down, the company temporarily installed spare transformers and cables while awaiting permanent repairs or replacement of the failed machinery. The power company had a property insurance policy whose expediting expense clause covered extra costs incurred in "temporary repair of damage to property and the extra costs of expediting the permanent repair or replacement of damaged property." 134 F.3d at 791. The insurance company covered the permanent repairs, but declined to pay for the temporary installation of spare machinery. The Sixth Circuit held that the policy did not cover the temporary installations because they were temporary replacements rather than repairs. It rejected the insured's argument that the damaged entity was the power plant and that the installation of temporary machinery was a temporary repair to the plant. The damage to specific transformers and cables at the power plant could not "properly be equated with loss or damage to the . . . plant as a unified whole." <u>Id.</u> at 795. Lexington argues that we should follow <u>Detroit Edison</u> to conclude that only repairs or replacements to the switchgear itself are covered under Offutt's policy.

Offutt's policy is different from the one held by the power plant in <u>Detroit Edison</u>. The policy in <u>Detroit Edison</u> covered only "temporary repair," but the

expediting expense clause in Offutt's policy covers "the reasonable extra cost of temporary repair and/or replacement" of insured property. Lexington urges us to consider this difference unimportant. It characterizes the case as holding that every piece of insured property must be considered separately for the purpose of expediting expenses. It draws an analogy between the switchgear here and the transformers and cables in Detroit Edison, and between Offutt's water pump and the Detroit power plant. It argues that a "replacement" can only be reimbursed under the expediting expense clause if it replaces the switchgear, even if the generators and fuel allowed the water pump to function again, for under Detroit Edison the switchgear must be considered separately from the other parts of the water pump. Lexington misconstrues its insured's position. Offutt asserts that the generators and fuel were a temporary "replacement" for the function performed by the switchgear, not for the function of the whole water pump. Detroit Edison is not pertinent since the court there was dealing with a policy covering only temporary "repairs" and it never had reason to construe policy coverage for "replacements."

The question here is whether the term "replacement" in Offutt's policy means an exact replacement, as Lexington argues, or a functional replacement as Offutt argues and the district court concluded. Neither party has been able to direct us to a definition of "replacement" in the insurance contract, and we therefore treat the term as undefined and apply its plain, ordinary meaning. See, e.g., Martin v. Allianz Life Ins. Co. of N. Am., 573 N.W.2d 823, 825 (N.D. 1998). If Lexington had intended "replacement" to be a term of art distinct in meaning from ordinary usage, it should have defined it as such within the four corners of the contract. See Oxy USA, Inc. v. Hartford Ins. Group, 58 F.3d 380, 382 (8th Cir. 1995) (applying North Dakota law).

A dictionary is "a good source to determine the plain, ordinary meaning" of a word. Hanneman v. Cont'l W. Ins. Co., 575 N.W.2d 445, 451 (N.D. 1998). The listing for "replacement" refers to "replace" which is defined as "to provide or procure a substitute or equivalent in place of." 2 Oxford English Dictionary 2495 (compact ed. 1971). The meaning of "replace" is thus broad enough to include Offutt's

substitution of the generators and fuel in place of the switchgear. Since replacement means a substitution of, or an equivalent to, what preceded, it includes functional as well as exact replacements. That definition is also consistent with everyday usage. A person replaces another in a job, for example; even though there may be significant differences between the two people, the replacement will perform the same basic function. See, e.g., Blair's Replacement Chosen, Grand Rapids Press, June 25, 2007, at A4; see also Martin, 573 N.W.2d at 826 (ordinary meaning is definition which one not trained in law would attach to term). Although the generators and fuel were not identical to the switchgear, they substituted for the switchgear by providing the electrical power it would normally provide.

This reading of "replacement" is consistent with the insurance contract examined as a whole and with an eye to its purpose, as it must be under North Dakota law. See Bridston ex rel. Bridston v. Dover Corp., 352 N.W.2d 194, 196 (N.D. 1984); see also N.D. Cent. Code § 9-07-06 (in construing contracts, "[e]ach clause is to help interpret the others"). The policy here insured against "loss resulting from necessary interruption of business conducted by the insured, and caused by the loss, damage or destruction" of covered property. It also insured Offutt against "extra expense incurred resulting from loss, damage, or destruction" to covered property. As the district court noted, the presence of these two provisions suggests that the policy was meant to insure property *in order to* protect Offutt's business, namely providing good conditions for tenants to grow crops and to that end ensuring an adequate water supply. Because the generators and fuel temporarily replaced the instrumental value of the switchgear, the cost of the generators and fuel is covered under the policy.

Lexington next argues that Offutt's motivation in renting the generators and buying fuel brought the expenses into the policy exclusion for growing crops because Offutt incurred them in order to protect growing crops and to avoid exposure to liability which might arise from damaged or destroyed crops. In Offutt's view, however, the language of the exclusion does not reach the expenses it incurred in renting generators and buying fuel. Lexington bears the burden of establishing that

an exclusion applies. See Kasper v. Provident Life Ins. Co., 285 N.W.2d 548, 554 (N.D. 1979); Lovas v. St. Paul Ins. Cos., 240 N.W.2d 53, 62 (N.D. 1976).

The policy excludes "loss or damage to . . . growing crops," but Offutt is not claiming loss or damage to growing crops. The record does not indicate that any crops were ever lost or damaged. Rather, Offutt seeks to be indemnified for expenses incurred in replacing covered property in order to prevent loss or damage to growing crops. We agree with Offutt that the plain language of the exclusion does not apply to the expenses claimed in this case. Lexington has cited no authority to show that an insured's purpose or intent is relevant to the coverage analysis we must perform.

We also note that Lexington's argument would exclude from coverage the expenses for the purchase and permanent installation of another switchgear, but it has conceded these expenses are covered. Offutt's business as owner of Threemile is to provide conditions for its tenants to be able to grow their crops. Every piece of covered property on Threemile must directly or indirectly further that business, and so every repair or replacement to covered property is performed in order to protect and cultivate the crops grown on the land. When Offutt permanently replaced the switchgear, for example, it did so in order to provide irrigation for the crops. If an intent to protect growing crops excluded otherwise covered expenses, then the switchgear's permanent replacement, along with almost any replacement or repair to covered property on Threemile, would not be covered under the policy. Since Lexington promptly reimbursed Offutt for the permanent replacement of the switchgear, it is clear that neither party believes that intent to protect excluded property can exclude otherwise covered expenses from coverage under this policy.

Finally, Lexington asserts that the insurance policy in this case is a first party property insurance policy rather than a third party liability insurance policy. The policy was designed to protect loss or damage to property owned by Offutt rather than to reimburse Offutt against liability to a third party. According to Lexington, Offutt's expenses are not covered because they were incurred in order to avoid liability to third

party tenants for interrupted irrigation. In substance, this argument recapitulates Lexington's other argument that an intent or purpose to protect growing crops can move otherwise covered expenses outside the bounds of coverage. Lexington has pointed to no authority which convinces us that an insured's intent or purpose should inform our coverage analysis. Moreover, unlike its argument about the growing crops exclusion, Lexington's argument relating to third party liability does not appear to rely on a concrete exclusion in the policy.

We conclude that the district court did not err in concluding that the expenses for renting generators and buying fuel were covered under Offutt's policy and in granting it summary judgment.

III.

Lexington contends that the district court abused its discretion by awarding attorney fees to Offutt. In its view the cases in which the North Dakota Supreme Court has awarded attorney fees to insureds are distinguishable and its lack of bad faith made the district court's award inappropriate. Offutt responds that the law of North Dakota clearly favors an award of attorney fees in this case.

The North Dakota Supreme Court has ruled that attorney fees may be awarded against an insurance company in a declaratory judgment action when coverage exists under the insured's policy. That conclusion is based on a statute enacted by the state legislature providing that "[f]urther relief based on a declaratory judgment or decree may be granted whenever necessary or proper." N.D. Cent. Code § 32-23-08. The supreme court has reasoned that fees are among the types of further relief that the legislature had in mind to be available in declaratory judgment actions. See, e.g., State Farm & Cas. Co. v. Sigman, 508 N.W.2d 323 (N.D. 1993).

Lexington argues that Sigman, as well as another case upon which Offutt relies, Western National Mutual Insurance Co. v. University of North Dakota, 643 N.W.2d

4 (N.D. 2002), are distinguishable from the present case. It points out that the insurance policy in <u>Sigman</u> explicitly provided for an award of attorney fees to the insured which Offutt's policy does not. <u>Sigman</u> stated in addition, however, that the state declaratory judgment statute provided "an independent ground" for the award of fees, 508 N.W.2d at 326, making a contractual provision unnecessary to recover them. Lexington also argues that <u>Sigman</u> and <u>Western National</u> were both declaratory judgment actions brought by an insurance company. Neither case based its award of fees on which party initiated the action, however. Both awards were based on the principle that an insured who must engage in litigation to obtain coverage is entitled to regain the cost of ensuring the full benefit of coverage for which he contracted. See <u>Western National</u>, 643 N.W.2d at 19; <u>Sigman</u>, 508 N.W.2d at 327. That principle is equally applicable when the insured initiates the litigation, for both plaintiffs and defendants incur attorney fees.

Lexington also argues that Offutt's declaratory judgment action is nothing more than a mirror of its breach of contract count, and fees should not be awarded because North Dakota does not award them in breach of contract actions. Offutt responds that the North Dakota Supreme Court has already dealt with such circumstances. In <u>Western National</u>, an insurer brought an action against an insured seeking resolution of a coverage dispute arising from property damage. The trial court held there was a genuine issue of fact on a dispositive causation question and held a bifurcated trial. In the first phase the jury decided causation in favor of the insured, and in the second it awarded the insured damages of over \$3.3 million in compensation for benefits due under the policy. The trial court subsequently awarded costs and attorney fees to the insured, despite the fact that the insurer had initiated the action, and the supreme court affirmed. The opinion in <u>Western National</u> states at one point that the form of action there was one for declaratory judgment, <u>see</u> 643 N.W.2d at 8, but later indicated that the insured was seeking "damages for a breach of contract." <u>Id.</u> at 18. Indeed, it affirmed the trial court's award of prejudgment interest under a statute which provides that a litigant may recover prejudgment interest if it is also entitled to "*damages* certain or capable of being made certain." N.D. Cent. Code § 32-03-04 (emphasis

-11-

added). The insured in that case thus recovered attorney fees in a case including a breach of contract claim.[3]

Finally, Lexington argues that the North Dakota statute's language is couched in discretionary terms and thus an award of attorney fees is not mandatory. Because Lexington lacked bad faith in its denial of Offutt's coverage, it says it would be inappropriate to award Offutt fees. The North Dakota Supreme Court has never suggested that the absence of bad faith is relevant to an award of fees to the insured. In fact, in <u>Western National</u> the jury found that the insurer had not acted in bad faith by denying coverage, 643 N.W.2d at 8, a finding that was not challenged on appeal, and fees were nonetheless awarded. More fundamentally, the supreme court has based its decisions in this area on the principle that insureds should be made whole, not on a desire to deter bad acts by insurers.[4] As the court has stated, "When the insured gets . . . policy protection only by court order after litigating coverage, it is both 'necessary' and 'proper' to award attorney fees and costs to give the insured the full benefit of his insurance contract." <u>Sigman</u>, 508 N.W.2d at 326-27. This principle applies even if an insurer denies coverage in good faith, since even a good faith denial that leads to litigation forces the insured to spend money litigating the issue of coverage. Moreover, the district court was careful not to award Offutt fees for time spent

---

[3]It is conceivable that <u>Western National</u> may have been only a declaratory judgment action with damages awarded as supplemental relief under N.D. Cent. Code § 32-23-08. <u>See</u> <u>Principal Mut. Life Ins. Co. v. Straus</u>, 863 P.2d 447, 451 (N.M. 1993) (damages available as supplemental relief under Uniform Declaratory Judgments Act). Nevertheless, by including the breach of contract claim Offutt did not obtain any relief that would have been unavailable in a pure declaratory judgment action, and Lexington admits that the contract claim added no legal or factual question to the case.

[4]The Connecticut Supreme Court recently differentiated states which award attorney fees as a rule in coverage actions from those which award fees only when there was bad faith; it included North Dakota in the first group. <u>See</u> <u>ACMAT Corp. v. Greater N.Y. Mut. Ins. Co.</u>, 923 A.2d 697, 703 & n.9, 705 & n.11 (Conn. 2007).

litigating the unsuccessful bad faith claim.  We conclude that the district court did not abuse its discretion in its fee award.

## IV.

For these reasons we affirm the judgment of the district court.

_____