# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3380

_____

State Farm Fire and Casualty Company,   *
                                           *

               Appellant,         *

                                         *  Appeal from the United States

            v.                 *  District Court for the

                                       *  District of Minnesota.

Burton J. Ewing, Jr.; Kristin Horner,   *

as Trustee for the Heirs and Next of    *

Kin of Mary Elizabeth Ewing,        *

                                       *

            Appellees.         *

_____

Submitted:  June 11, 2001

Filed: August 1, 2001 (corrected 10/10/01)

_____

Before BOWMAN and HEANEY, Circuit Judges, and KOPF[1], District Judge.

_____

HEANEY, Circuit Judge.

_____

[1]The Honorable Richard G. Kopf, Chief Judge, United States District Court, for the District of Nebraska, sitting by designation.

State Farm appeals the district court's[2] determination that Burton Ewing, who murdered his sister while suffering from a psychotic delusion, is an insured under his mother's homeowner's policy and personal liability umbrella policy for the purpose of providing him a defense or indemnification to the wrongful death action brought by his deceased sister's Trustee. Because we agree with the district court that Burton was a member of his mother's Clearwater, Minnesota household, that his sister's death was an "occurrence" within the terms of the policies, and that the household exclusion does not apply, we affirm.

I. Background

The following facts were found by the district court and are uncontroverted on appeal. Marlys Olson is the mother of Mary Beth and Burton, both adults during the time relevant to this lawsuit. Burton has bipolar affective disorder and schizoaffective disorder. He has a history of mental illness dating back to 1988, and has been hospitalized three times due to circumstances relating to his mental illness. Until her death, Mary Beth lived in Olson's condominium, and Burton lived in a cabin in Clearwater, Minnesota.

Burton purchased the Clearwater cabin in 1991, but his financial difficulties jeopardized his ability to keep his home. In 1995, Olson purchased the cabin from Burton to ensure that he would have a place to live. She paid all the property taxes for the cabin, and Burton paid for the telephone service and other utility bills. He did not pay rent. Olson had a key to the cabin, and assisted Burton in its upkeep and maintenance, but she lived in her condominium in Vadnais Heights, Minnesota. Burton occasionally visited Olson's condominium, and stayed overnight twice a year. Olson and Burton expected this arrangement to continue indefinitely.

---

[2] The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

2

In 1995 and 1996, Olson purchased three insurance policies from State Farm because she was concerned about increased liability against herself and Burton due to his mental illness. Those policies included a homeowners policy for the Clearwater cabin; a condominium policy for her Vadnais Heights home; and a personal liability umbrella policy attached to the Clearwater property. Olson explicitly told the agent that Burton was living in the Clearwater cabin and emphasized that she wanted excellent insurance because of her family's circumstances. Additionally, Burton purchased a State Farm renter's policy. He indicated on his policy application that he was the sole tenant of the Clearwater cabin. He explained that he bought the policy because he did not know if his personal possessions would be covered by his mother's insurance policies.

On May 7, 1998, Burton was in a delusional and psychotic state, and believed that he was being directed to kill his mother. He was not under psychiatric care nor on psychotropic medication at the time. He went to his mother's Vadnais Heights home, and although Olson was at work, Mary Beth let him into the house. Under horrific circumstances Burton killed Mary Beth.

On September 11, 1998, Burton was found not guilty by reason of mental illness of second degree intentional murder. The court determined that Burton was under "such defect of reason that he was not able to fully appreciate the wrongfulness of his act." He was later found mentally ill and dangerous, and is currently in custody at the Minnesota Security Hospital.

Kristen Horner, Mary Beth's sister, was appointed Trustee by the Minnesota state court to bring a wrongful death action against Burton on behalf of Mary Beth's heirs and next of kin. Burton claimed coverage under the Clearwater homeowner's policy, the umbrella policy, and his renter's policy. State Farm filed an action for declaratory judgment seeking a determination of coverage and indemnification under all three policies. The district court granted summary judgment to Horner, finding

that Olson's State Farm policies and Burton's renter's policy covered Burton's murder of Mary Beth because it was an "occurrence" within the purview of the insurance policies. State Farm appeals.

## II. Discussion

This court reviews a grant of summary judgment <u>de</u> <u>novo</u>. <u>See</u> Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Noran Neuro. Clinic v. Travelers Indem. Co.</u>, 229 F.3d 707, 709 (8th Cir. 2000). We must ask whether the record, when viewed in a light most favorable to State Farm, shows there is no genuine issue of material fact and that Ewing and the Trustee are entitled to judgment as a matter of law. Additionally, Minnesota law determines the rights of the parties in this diversity action, <u>see</u> <u>Jurrens v. Hartford Life Ins. Co.</u>, 190 F.3d 919, 922 (8th Cir. 1999), and this court is bound by the decisions of the Minnesota courts. If the state courts have not addressed the issue before us, we must predict how the state supreme court would resolve the issue if faced with it. <u>West v. Am. Tel. & Tel. Co.</u>, 311 U.S. 223, 237 (1940); <u>Marvin Lumber & Cedar Co. v. P.P.G. Indus., Inc.</u>, 223 F.3d 873, 876 (8th Cir. 2000).

> Olson's homeowner's policy for the Clearwater cabin reads in part:
>
> If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an an occurrence, we will:
>
> 1. pay up to our limit of liability for the damages for which the insured is legally liable; and
> 2. provide a defense at our expense by counsel of our choice.

(App. at 19 (emphasis omitted).) An "insured" is defined as "[the named insured] and, if residents of your household: your relatives; and any other person under the age

4

of 21 who is in the care of a person described above." (App. at 5.) An "occurrence" is "an accident; including exposure to conditions, which results in bodily injury or property damage." (App. at 6.) "Bodily injury" includes physical injury, sickness, disease, and resulting death. (App. at 5.)

Olson's personal liability umbrella policy, attached to the Clearwater residence, provides in part, "[i]f you are legally obligated to pay for damages for a loss, we will pay your net loss minus the retained limit." (App. at 39 (emphasis omitted).) The "insured" in the policy include the named insured (Olson), relatives living in the named insured's household, and minors living in the named insured's household. (App. at 37.) "Net loss" is defined as "the amount you are legally obligated to pay as damages for personal injury or property damage." (App. at 38.) "Personal injury" is defined to include physical injury, sickness, disease, emotional distress, mental injury, and resulting death. (Id.)

The first issue before us is whether Burton Ewing is an insured under Olson's homeowner's and umbrella policies. State Farm asserts that Ewing is not an insured under the policies, and not entitled to a defense or indemnification under those policies, because Ewing was not a resident of Olson's Vadnais Heights home, and therefore not a part of her household. Ewing and the Trustee respond that Olson maintained two households, the Clearwater cabin and the Vadnais Heights condominium, and that under the terms of the policies, any relative who resides in a household of the named insured is an insured himself.

Minnesota courts have not addressed whether a named insured may have two households; they have determined, however, that persons can live in more than one household. See Am. Family Mut. Ins. Co. v. Thiem, 503 N.W.2d 789, 790-91 (Minn. 1993) (holding son member of father's household though not resident of father's household at time of accident); Mut. Service Cas. Ins. Co. v. Olson, 402 N.W.2d 621, 624 (Minn. Ct. App. 1987) (holding son member of mother's household where

5

principal residence was with father). It is logical to assume that persons can *maintain* two households. Lott v. State Farm Fire & Casualty Co., 541 N.W.2d 304 (Minn. 1995) supports this concept. In that case the Minnesota Supreme Court determined that Zona Roesler, one of several owners of a summer cabin, maintained the cabin property as a household in addition to her Fargo home. The court determined that Roesler's son, who was involved in an accident at the cabin, was not a resident of her cabin household at any time relevant to the lawsuit for purposes of insurance coverage because "[f]rom 1982 on, [her son] has continuously lived at a location other than his parents' home," suggesting that Roesler's "household" included her Fargo home and her cabin, each covered under a separate homeowner's policy. Id. at 308. The facts of that case support the conclusion that the Clearwater cabin was one of Olson's two households. Olson owned and insured the cabin, paid taxes on it, furnished it, and maintained it, just as she owned, insured, and maintained her Vadnais Heights home. Olson controlled who lived at the cabin, and clearly was concerned about the safety of herself, her children, and others when she purchased the insurance policies for the Clearwater cabin.

Other jurisdictions have held that a person can maintain a household without living in it. In Erie Ins. Exch. v. Stephenson, 674 N.E.2d 607 (Ind. Ct. App. 1996), a grandson moved into his grandmother's home when she moved in with her daughter because of her failing health. The grandmother continued to own her home and pay taxes on it, and the grandson paid the utility bills. The grandson injured a friend at the grandmother's home. The Indiana court declined to define "household" as requiring all family members to live under one roof, and determined that the grandmother's insurance policy covered the grandson's accident. Id. at 610. The court explained, "it is possible to maintain two households or to live as a member of one household and still be the 'domestic head' of a separate household." Id.

Similarly, in Schaut v. Fireman's Ins. Co., 515 N.Y.S.2d 60 (N.Y. App. Div. 1987), Anthony Bullotta, a divorced father, purchased a homeowner's insurance

6

policy for the home where his ex-wife and children lived. Bullotta did not live at that residence, but he participated in its maintenance and in the care of their children. When his son's dog bit a child, the court determined that the insurance company was obligated to extend coverage to the son because he was a member of Bullotta's household. Id. at 61.

In the cases cited above, a long-standing familial bond linked the persons to a household. The relationship between the resident member of the household and the non-resident member was characterized by dependence in some capacity. The non-resident member retained control over the property, and purchased insurance for the property for the express purpose of protecting the resident member of the household. Here, Olson provided substantial economic support to her adult son to alleviate the debilitating consequences of his mental illness. She purchased the cabin, insured it for his safety, furnished and maintained it, bought his groceries, covered his car repairs, and paid off his credit card debt. Burton was financially and emotionally dependent upon his mother's assistance. We therefore conclude that Burton is a member of Olson's household and an insured under Olson's insurance policies attached to the Clearwater cabin.

The second issue before us is whether Mary Beth's death was an occurrence under the terms of Olson's homeowner's policy and Burton's renter's policy,[3] as well

---

[3]We raise the issue of Burton's renter's policy only for the purpose of determining whether the death was an occurrence for insurance coverage. There is no question that Burton is an insured under that policy. It states in part:

> If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence, we will:

> 1.     pay up to our limit of liability for the damages for which the insured is legally liable; and

as a "loss" as defined by the umbrella policy. The policies define "occurrence" as "an accident which results in . . . bodily injury." (App. at 6, 52.) "Loss" is defined in the umbrella policy as "an accident that results in personal injury." (App. at 37). "Accident" is not defined in the policies. The Minnesota Supreme Court defines the term as "a happening that is unexpected and unintended." McIntosh v. State Farm Mut. Auto. Ins. Co., 488 N.W.2d 476, 478 (Minn. 1992). Therefore, to establish entitlement to coverage under the three above-mentioned policies, the Trustee must show that Mary Beth's death was caused by a happening that was unexpected and unintended.

State Farm argues that no Minnesota court has held that an injury caused by a mentally ill person is an accident for purposes of insurance coverage, and asserts that Burton's intent to kill his mother and to hit his sister with a hammer precludes characterizing Mary Beth's death as an accident. The Trustee responds that State Farm Fire & Cas. Co. v. Wicka, 474 N.W.2d 324, 331 (Minn. 1991) (holding that conduct of mentally ill person may be considered unexpected and unintended for purposes of defeating intentional act exclusion commonly included in homeowners' liability policies) should extend to Burton's act in this case. The district court concluded that Burton did not act intentionally:

> Burton has been adjudicated mentally ill. As such, he did not possess the ability to control his conduct regardless of any understanding of the nature of the act or its wrongfulness. Because he lacked such ability, the act of bludgeoning his sister to death was both "unexpected and unintended." . . . Although the Minnesota courts have yet to specifically address the issue of whether a death caused by a mentally ill individual is an "accident," this court believes that the Minnesota courts would extend Wicka to address such question.

2.      provide a defense at our expense by counsel of our choice.

(App. at 62).

8

State Farm Fire & Cas. Co. v. Ewing, No. 99-1256, slip op at 9 (D. Minn. Aug. 23, 2000). We agree with the court's well-reasoned conclusion, and hold that Mary Beth's death was an occurrence for the purposes of insurance coverage.

The third issue before us is whether the household exclusion in the policies applies and precludes coverage. The household exclusion excludes insurance "for bodily injury or personal injury to the named insured, spouse or anyone within the meaning of . . . the definition of insured." The definition of insured includes a resident relative of a named insured's household or "any person under the age of 21 who is in the care of a person described above." The homeowner and umbrella policies also include a severability provision that states: "This insurance applies separately to each insured." The district court concluded that the household exclusion does not preclude coverage because the insurance policies under which Horner seeks to establish coverage are not the policies covering the condominium, where Mary Beth was a resident, but the policies covering the Clearwater cabin. Because of the severability provisions, the exclusion precludes coverage only if Burton and Mary Beth were living in the same household at the time of her death. See American Nat'l Fire Ins. Co. v. Estate of Fournelle, 472 N.W.2d 292 (Minn. 1991). The court has found they were not. We agree with the district court.

III. Conclusion

Having determined that Burton is an insured under Olson's insurance policies, that Mary Beth's death was an occurrence for the purposes of insurance coverage, and that the household exclusion does not apply, we affirm.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.