# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3510

_____

In re:  General American Life Insurance   *
Company Sales Practices Litigation.    *
   *
Charles Kenneth Knouse; Lillian    *
Elizabeth Knouse, husband and wife,    *
   *
       Plaintiffs/Appellants,    *
   *
     v.    *
   *
General American Life Insurance    *
Company, also known as Genserve,    *
doing business as Genamerica;    *
Metropolitan Life Insurance Company;  *
Ronald L. Gribschaw,    *
   *
       Defendants/Appellees.    *

_____

No. 03-3516

_____

In re:  General American Life Insurance  *
Company Sales Practices Litigation.    *
   *
Patricia S. Palashoff,    *
   *
       Plaintiff/Appellant,    *
   *
Nicholas P. Palashoff,    *
   *
       Plaintiff,    *

Appeals from the United States
District Court for the
Eastern District of Missouri.

```
                                        *
General American Life Insurance         *
Company, also known as Genserve,        *
doing business as Genamerica;           *
Metropolitan Life Insurance Company;    *
William Wrenshall & Associates, Inc.;   *
Ronald L. Gribschaw,                    *
                                        *
        Defendants/Appellees.           *
                _____

                No. 03-3517
                _____


In re:  General American Life Insurance *
Company Sales Practices Litigation.     *
                                        *
Carol Louise Brown,                     *
                                        *
        Plaintiff/Appellant,            *
                                        *
    v.                                  *
                                        *
General American Life Insurance         *
Company; also known as Genserve,        *
doing business as Genamerica;           *
Metropolitan Life Insurance Company;    *
William J. Katzbeck; Derrick F.         *
Eaglin,                                 *
                                        *
        Defendants/Appellees.           *
                _____

        Submitted:  September 16, 2004
            Filed:  December 6, 2004
                _____
```

Before WOLLMAN, RICHARD S. ARNOLD,[1] and BYE, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Plaintiffs in these consolidated cases appeal from the district court's grant of defendants' motions to dismiss in each case. We reverse and remand for further proceedings.

## I.

### A.

The following facts are taken from the plaintiffs' complaints. Plaintiff insureds originally brought their cases individually, but have now consolidated their appeals. Plaintiffs Charles and Lillian Knouse met with insurance agent Ronald Gribschaw on June 17, 1985. At this meeting, Gribschaw presented the Knouses with illustrations stating that the Knouses could obtain a whole life insurance policy on Mrs. Knouse by paying a one-time advance payment to defendant General American. Gribschaw represented that the policy's premiums would "vanish" after the first payment because the dividends and accrued interest on the policy would be sufficient to cover the annual premiums without any additional out-of-pocket payments from the Knouses. Gribschaw also represented that the Knouses could obtain a similar policy for Mr. Knouse by making a first-year payment followed by annual premium payments for 14 years. Gribschaw represented that the premiums on that policy would also "vanish" after the last annual premium payment. The Knouses then purchased both policies. The Knouses purchased an additional policy in 1987 after similar representations by Gribschaw.

_____

[1]The Honorable Richard S. Arnold died on September 23, 2004. This opinion is filed by the remaining judges of the panel pursuant to 8th Cir. Rule 47E.

In July 1993, Mrs. Knouse received a telephone call from Gribschaw and a letter from General American indicating that an additional out-of-pocket payment was due on her policy. The letter stated that her premiums had failed to vanish because the vanishing premium concept itself was heavily dependent on dividends, which were not guaranteed. The Knouses later received letters from General American asking for additional payments in 1997 and 2000. The Knouses made payments to General American after each request.

The Knouses received notice of a pending class action against General American in September 2000. The class action—later consolidated with two similar class actions—was filed in February 1996 and included all plaintiffs in these cases as class members. See Henderson v. General American Life Ins. Co. (In re General American Life Ins. Co. Sales Practices Litig.), 268 F.3d 627, 629-30 (8th Cir. 2001), vacated, 536 U.S. 919 (2002) (class definition). After opting out of a proposed class action settlement, the Knouses commenced their individual action against defendants General American, Metropolitan Life (General American's parent company), and Gribschaw on January 9, 2001. The Knouses brought claims against defendants for negligence/willful disregard; common law fraud and deceit; violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), Pa. Stat. Ann. tit. 73, § 201-1, et seq.; violation of Pennsylvania's bad faith statute, 42 Pa. Cons. Stat. § 8371; breach of fiduciary duty; and negligent supervision. Their action was then removed to the Western District of Pennsylvania and transferred to the Eastern District of Missouri by the Judicial Panel on Multidistrict Litigation (MDL Panel). The Eastern District of Missouri denied the Knouses' motion to remand the action to Pennsylvania state court on the ground that the non-diverse defendant in the case (Gribschaw) had been fraudulently joined. The district court then granted defendants' motion to dismiss the Knouses' complaint because all of the claims therein were barred by the applicable Pennsylvania statutes of limitations.

**B.**

Plaintiffs Nicholas and Patricia Palashoff met with Gribschaw on October 10, 1985. Gribschaw again utilized policy illustrations and represented that the Palashoffs could purchase a policy for Mrs. Palashoff with premiums that would vanish after ten years and a policy for Mr. Palashoff with vanishing premiums after 27 years. The Palashoffs then purchased two policies from Gribschaw and agreed to make their premium payments through a monthly automatic withdrawal from their checking account. The Palashoffs continued to make payments through this automatic method at least until the date that they filed their individual action.

The Palashoffs received notice of the pending class action in September 2000 and promptly opted out of the proposed settlement. They instituted their individual action against General American, Metropolitan Life, Gribschaw, and William Wrenshall & Associates, Inc. (Gribschaw's employer) on January 16, 2001, alleging the same six claims as the Knouses. The case was then removed and transferred to the Eastern District of Missouri in the same manner as the Knouses' case. The district court similarly denied the Palashoffs' motion to remand the case and then granted defendants' motion to dismiss on statute of limitations grounds.

**C.**

Plaintiff Carol Brown met with agents William Katzbeck and Derrick Eaglin on January 4, 1985. The agents showed Brown illustrations predicting that she could obtain a policy on her own life with premiums that would vanish after 20 years of payments as well as a policy on her son's life with premiums that would vanish after 10 years of payments. Brown purchased both policies and agreed to make monthly premium payments through an automatic withdrawal from her checking account. Brown continued to make payments at least through the date that she commenced her individual action.

Although not included in her complaint, it appears that Brown also received notice of the pending class action against General American in September 2000. She opted out of the proposed settlement and filed an individual action against General American, Metropolitan Life, Katzbeck, and Eaglin on January 30, 2001. Brown alleged the same six claims as the Knouse and Palashoff plaintiffs. Brown's case was removed to the Western District of Pennsylvania, which denied her motion to remand. The case was then transferred by the MDL Panel to the Eastern District of Missouri. The district court granted defendants' motion to dismiss and denied Brown's motion for reconsideration.

**II.**

We have jurisdiction to hear this appeal under 28 U.S.C. § 1291. We review the district court's grant of a motion to dismiss *de novo*, applying the same standards as the district court. Ballinger v. Culotta, 322 F.3d 546, 548 (8th Cir. 2003). We accept the allegations in the plaintiffs' complaints as true and will dismiss the cases only when it appears beyond doubt that the plaintiffs can prove no set of facts that would entitle them to relief. McCormick v. Aircraft Mechs. Fraternal Ass'n, 340 F.3d 642, 644 (8th Cir. 2003). We review the district court's denial of a motion to reconsider for abuse of discretion. Davidson & Schaaff, Inc. v. Liberty Nat'l Fire Ins. Co., 69 F.3d 868, 871 (8th Cir. 1995).

When a transferee court receives a case from the MDL Panel, the transferee court applies the law of the circuit in which it is located to issues of federal law. Temporomandibular Joint (TMJ) Implant Recipients v. E.I. du Pont de Nemours and Co. (In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.), 97 F.3d 1050, 1055 (8th Cir. 1996). When considering issues of state law, however, the transferee court must apply the state law that would have applied had the cases not been transferred for consolidation. Id. All parties agree that Pennsylvania law, including its statutes of limitations, would have applied in these cases had they not been transferred. See also Larsen v. Mayo Med. Ctr., 218 F.3d 863, 866 (8th Cir.

2000) (statutes of limitations are components of a state's substantive law). Because this is a diversity case, we review the district court's interpretation of Pennsylvania law *de novo*. Davidson & Schaaff, 69 F.3d at 870.

Plaintiffs' claims for negligence/willful disregard, common law fraud and deceit, breach of fiduciary duty, and negligent supervision are governed by Pennsylvania's general two-year tort statute of limitations. See 42 Pa. Cons. Stat. § 5524(7). The applicable limitations periods for plaintiffs' bad faith and UTPCPL claims, however, have not been squarely addressed by either the Pennsylvania General Assembly or the Supreme Court of Pennsylvania. Accordingly, we must predict how the Supreme Court of Pennsylvania would rule on these issues. Penn. Nat. Mut. Cas. Ins. Co. v. City of Pine Bluff, 354 F.3d 945, 952 (8th Cir. 2004). "In making our prediction[s], we may consider relevant state precedent, analogous decisions, considered dicta, ...and any other reliable data." Jurrens v. Hartford Life Ins. Co., 190 F.3d 919, 922 (8th Cir. 1999) (internal citations omitted). Decisions from Pennsylvania's intermediate appellate court (the Superior Court of Pennsylvania) are particularly relevant and must be followed when they are the best evidence of Pennsylvania law. Holden Farms, Inc. v. Hog Slat, Inc., 347 F.3d 1055, 1066 (8th Cir. 2003).

We predict that the Supreme Court of Pennsylvania would assign a two-year statute of limitations to plaintiffs' bad faith claims and a six-year statute of limitations to plaintiffs' UTPCPL claims. The Third Circuit recently conducted an extensive inquiry into the limitations period applicable to violations of Pennsylvania's bad faith statute using a standard identical to our own, and we agree with our sister circuit's determination that the Supreme Court of Pennsylvania would apply a two-year statute of limitations to such claims. See Haugh v. Allstate Ins. Co., 322 F.3d 227, 234-36 (3d Cir. 2003); Ash v. Continental Ins. Co., No. 1842 WDA 2003, 2004 WL 2453762, at *4-*5 (Pa. Super. Ct. Nov. 3, 2004) (adopting Third Circuit's reasoning). In addition, given the Pennsylvania Superior Court's holding that a six-year statute

of limitations applies to UTPCPL violations, we predict that the Supreme Court of Pennsylvania would hold UTPCPL claims subject to a six-year limitations period. See Gabriel v. O'Hara, 534 A.2d 488, 496 (Pa. Super. Ct. 1987).

### III.

Plaintiffs argue that the district court erred by concluding as a matter of law that the statutes of limitations on all of plaintiffs' claims had elapsed because each plaintiff could have discovered their alleged injuries at the time they occurred or shortly thereafter. They contend that Pennsylvania's "reasonable expectations" doctrine, as well as the 1996 class action, may toll some or all of their claims. We agree.[2]

### A.

In Pennsylvania, "the statute of limitations begins to run as soon as the right to institute and maintain a suit arises." Dalrymple v. Brown, 701 A.2d 164, 167 (Pa. 1997). The running of the statute may be tolled, however, by Pennsylvania's discovery rule. Id. The discovery rule is an equitable rule that tolls the statute of limitations for that period of time "during which the injured party is *reasonably unaware* that an injury has been sustained." Id. (emphasis in original). In order to invoke the discovery rule, a party bears the burden of showing that it could not discover its injury despite the exercise of "reasonable diligence." Id. Reasonable diligence is an objective standard, and the discovery rule will apply to toll a statute of limitations only where no amount of reasonable diligence would have enabled the injured party to discern the injury. Id. at 167, 170.

---

[2]Because the district court's grant of the motions to dismiss was premised solely on statute of limitations grounds, we address only those claims of error raised by plaintiffs which pertain to the commencement of the limitations period.

Although the question whether a party could have discovered its injury through the exercise of reasonable diligence is normally a factual issue "best determined by the collective judgment, wisdom and experience of jurors," the commencement of the limitations period may be determined as a matter of law if the facts are so clear that reasonable minds cannot differ. Crouse v. Cyclops Indus., 745 A.2d 606, 611 (Pa. 2000).

Pennsylvania appellate courts have not yet explored the discovery rule's application to vanishing premium cases such as this one. The Supreme Court of Pennsylvania has stated, however, that the reasonable diligence standard is "sufficiently flexible...to take into account the differences between persons and their capacity to meet certain situations and the circumstances confronting them at the time in question." Id. (quoting Burnside v. Abbott Labs., 505 A.2d 973, 988 (Pa. Super. Ct. 1985)). A plaintiff's actions must be evaluated, therefore, to determine whether they conform to "those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests...." Id. (quoting Burnside, 505 A.2d at 988). Each plaintiff must exercise "only the level of diligence that a reasonable man would employ under the facts and circumstances presented in a particular case." Id. at 611-12.

One Pennsylvania trial court has stated that, at least in the case of a non-commercial insured who is unsophisticated with regard to insurance policies, reasonable diligence entails a cursory examination of the cover page of the policy. See Half v. Metropolitan Life Ins. Co., 65 Pa. D. & C.4th 246, 254-56 (Ct. C. P. Allegheny Co. December 8, 2003). If this is indeed true, there is nothing on the cover pages of any of the policies at issue here that would inexorably lead to a conclusion that plaintiffs (non-commercial, unsophisticated insureds) should have known that the vanishing premium concept allegedly explained to them would not occur as represented. Each cover page states only that plaintiffs had a right to examine each policy and that flexible premiums were "payable" until each insured reached a certain

age.  See Appellants' Consolidated App. at 73a-74a (Palashoff), 130a-131a (Palashoff), 610a (Knouse), 647a (Knouse), 686a (Knouse), 1120a (Brown), 1153a (Brown).  These provisions could be read by a reasonable unsophisticated insured as being completely consistent with the agents' alleged representations that the premiums paid by plaintiffs for a limited time, in combination with policy interest and dividends paid, would be sufficient to cover future premiums.

The same is true for the illustrations given to each plaintiff by the insurance agent defendants at or shortly after the date that each policy was sold.  The sets of illustrations given to the Knouse and Brown plaintiffs indicate that the "insurance will terminate prior to the maturity date if the premium paid and the interest credited are insufficient to cover the monthly deductions."  See id. at 606a-608a (Knouse), 644a-645a (Knouse), 682a-683a (Knouse), 1115a-1119a (Brown).  This provision is not necessarily inconsistent with the agents' alleged representations that the premiums paid and interest credited during the "vanish" period *would* be sufficient to cover monthly deductions.  In addition, although the Knouse and Palashoff plaintiffs received illustrations stating that the dividend calculations used in the illustrations were "based on the current scale" and were "neither guarantees nor estimates" of future dividends, see id. at 106a-113a (Palashoff), 115a-120a (Palashoff), 122a-128a (Palashoff), 606a-608a (Knouse), 644a-645a (Knouse), 682a-683a (Knouse),  reasonable minds could differ as to whether these statements were necessarily inconsistent with the agents' alleged representations that plaintiffs' premium payments would vanish and would not increase at any time.  At the very least, this issue should go before a jury.

Even if reasonable diligence required plaintiffs to read their entire policies, the policy language is insufficient to show that plaintiffs would have discovered their injuries as a matter of law.  For instance, most of the policies at issue contain language identical or very similar to the "insurance may terminate prior to maturity date" language contained in the Knouse and Brown illustrations.  See Brief for

Appellants General American & Metropolitan Life at 47. Outside of such provisions, defendants rely on two words in regular type ("if any") located in the middle pages of each set of policy documents in order to show that plaintiffs should have been on notice that dividends may not be paid to their policies and thus that the vanishing premium concept was not guaranteed. See id. These provisions do not show beyond a reasonable doubt that plaintiffs should have discovered their injuries.

Furthermore, Pennsylvania courts have repeatedly acted to protect the "reasonable expectations" of non-commercial, unsophisticated insureds against deception and against policy terms that are not readily apparent. See Pressley v. Travelers Prop. Cas. Corp., 817 A.2d 1131, 1140 n.3 (Pa. Super. Ct. 2003). The Supreme Court of Pennsylvania has held—in the context of insurance coverage disputes—that because consumers view insurance agents as "possessing expertise in a complicated subject," it is not unreasonable for consumers to rely on the representations of the insurance agents rather than on the contents of the insurance policy. Rempel v. Nationwide Life Ins. Co., 370 A.2d 366, 368 (Pa. 1977). Therefore, where an insurance company or its agent "creates in the insured a reasonable expectation of coverage that is not supported by the terms of the policy," the insured's reasonable expectation will prevail over the actual terms of the policy. Bensalem Township v. Int'l Surplus Lines Ins. Co., 38 F.3d 1303, 1311 (3d Cir. 1994). A non-commercial, unsophisticated insured is thus under a duty to read a policy to discover inconsistent terms only when, under the circumstances, it is "unreasonable not to read it." Rempel, 370 A.2d at 369.

Given Pennsylvania's solicitude for non-commercial, unsophisticated insureds, as well as the flexible nature of the discovery rule, we predict that the Supreme Court of Pennsylvania would import its reasonable expectations analysis into its discovery rule jurisprudence when dealing with vanishing premium cases. We also predict that the Supreme Court of Pennsylvania would apply the reasonable expectations doctrine, standing alone, to toll the applicable statute(s) of limitations in such cases. It would

be inconsistent for the Supreme Court of Pennsylvania to allow an insured's reasonable expectations to prevail over the actual terms of the policy and to allow such reasonable expectations to excuse a failure to read an insurance policy to discover inconsistent terms while at the same time holding that the insureds must read their policy and discover their injury or risk losing their opportunity to bring suit within the relevant limitations period.

Because neither the applicability of the discovery rule nor the content of the plaintiffs' reasonable expectations can be determined as a matter of law at this stage of the litigation, both issues should be submitted to a jury. Accordingly, the district court should not have granted defendants' motions to dismiss.

**B.**

Plaintiffs also claim that their membership in a class action filed against General American in February 1996 tolled the statutes of limitations on their claims. In <u>Ravitch v. Price Waterhouse</u>, the Superior Court of Pennsylvania held that Pennsylvania does not allow class actions filed in other jurisdictions to toll the statutes of limitations on claims brought in individual actions in Pennsylvania state courts (cross-jurisdictional tolling). 793 A.2d 939, 943-45 (Pa. Super. Ct. 2002). If we applied the Pennsylvania rule to these cases, the pendency of the 1996 class action would have no effect on the statutes of limitations for plaintiffs' claims. We have stated, however, that the federal interest in "the efficiency and economy of the class-action procedure" outweighs any state interest and therefore justifies tolling in diversity cases where the otherwise-applicable state law provides no relief. <u>Adams Pub. Sch. Dist. v. Asbestos Corp.</u>, 7 F.3d 717, 718-19 (8th Cir. 1993). Because the law of our circuit applies to all issues of federal law in these consolidated cases, the district court should have considered whether the 1996 class action claims and the accompanying class description were sufficient to put each defendant on notice of the substantive Pennsylvania claims brought in these cases and to inform each defendant of the "generic identities" of these plaintiffs, <u>see</u> <u>American Pipe & Const. Co. v. Utah,</u>

-12-

414 U.S. 538, 554-55 (1974), and thus were sufficient to toll any or all of the applicable statutes of limitations.

## IV.

We accordingly reverse the district court's grant of the motions to dismiss and remand for further proceedings. On remand, the district court should reevaluate the statute of limitations issues in light of this opinion and of our prior holding that, in vanishing premium cases like this one, the latest that the statutes of limitations on each of the plaintiffs' claims can commence is when each plaintiff was asked to make out-of-pocket payments after the date on which the agents allegedly represented that each plaintiffs' premiums would "vanish." Parkhill v. Minn. Mut. Life Ins. Co., 286 F.3d 1051, 1055 (8th Cir. 2002).[3]

The district court should also determine whether our decision in this matter deprives it of jurisdiction over any or all of the consolidated cases. Each set of plaintiffs filed a motion to remand their respective cases to Pennsylvania state court on the basis of incomplete diversity. The district courts in each case (the Eastern District of Missouri in the Knouse and Palashoff actions and the Western District of Pennsylvania in the Brown action) disregarded the lack of diversity because, in the judgment of those courts, no claims could be stated against any non-diverse defendants because all of plaintiffs' claims were time-barred. Thus, the joinder of such defendants was fraudulent. Our decision today may reinstate some or all of plaintiffs' claims against the non-diverse defendants and accordingly render the joinder of those defendants non-fraudulent.

The judgments are reversed and the cases are remanded to the district court for further proceedings consistent with the views set forth in this opinion.

_____

[3]Thus, the latest that the claims of the Knouse, Palashoff, and Brown plaintiffs could have accrued is July 1993, September 1995, and April 1995, respectively.

-13-