# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3841

_____

| | | |
|---|---|---|
| Robert W. Kramer, III, doing business as CIS Internet Services, | * * * * | |
| Plaintiff - Appellee, | * * | |
| v. | * * | Appeal from the United States District Court for the Southern District of Iowa. |
| Henry Perez, | * * | |
| Defendant, | * * | |
| Suzanne Bartok, | * * | |
| Defendant - Appellant, | * * | |
| Gary C. Brown, | * * | |
| Defendant. | * | |

_____

Submitted: October 20, 2009
Filed: February 19, 2010

_____

Before COLLOTON, BEAM, and BENTON, Circuit Judges.

_____

BEAM, Circuit Judge.

Suzanne Bartok appeals the district court's order holding her jointly and severally liable to Robert Kramer for $236,480,660 in statutory damages under Iowa's anti-spam statute, formerly located in Iowa Code Chapter 714E.[1]  Since Bartok cannot be held liable for her conduct under the statute's plain language, we reverse.

## I.      BACKGROUND

The following facts are derived from the district court's findings.[2]  At all times material, Robert Kramer operated an internet service provider (ISP) in Clinton, Iowa, doing business as CIS Internet Services (CIS).  Henry Perez and Suzanne Bartok, citizens of Arizona, owned and operated AMP Dollar Savings (AMP), a corporation that did business under its own name as well as under other names such as Mortgageleads.tv and Plastic Profits.  Gary C. Brown was a certified public accountant and did some corporate accounting work for Perez and Bartok.

In 2001, Mortgageleads.tv entered into an agreement to provide mortgage leads[3] to a California mortgage broker named Cal Capital.  Bartok signed a letter confirming this agreement.  In 2003, in an apparent attempt to generate mortgage leads, Mortgageleads.tv sent a large quantity of spam (unsolicited bulk e-mail) advertising

---

[1]Iowa Code Chapter 714E was repealed in May 2005 and replaced with Iowa Code Chapter 716A.  See Kramer v. Perez, 579 F. Supp. 2d 1164, 1169 n.4 (S.D. Iowa 2008).  However, we consider this appeal under Iowa Code Chapter 714E, as it was the law in effect at the time in question.

[2]We note that the district court's factual findings are based substantially on deposition testimony not received into evidence during trial.  Because we reverse the district court's decision on other grounds, we need not decide whether the district court's reliance on such depositions constitutes reversible error.

[3]A "mortgage lead" is "the name and contact information for a person who has expressed an interest in financing or refinancing a residential mortgage."  Kramer, 579 F. Supp. 2d at 1165.

mortgage refinancing services to "cis.net" e-mail addresses. CIS's spam filter blocked all but twenty-three of those e-mails. To determine the source of this spam, Kramer's attorney opened one of the twenty-three e-mails CIS received, followed a link in the e-mail to a mortgage refinancing website, and submitted a mortgage solicitation form using his actual telephone number. Shortly thereafter, a Cal Capital employee contacted Kramer's attorney using the telephone number he provided on the solicitation form.

Before conducting Mortgageleads.tv's spamming operation, Perez gained experience sending spam on behalf of Plastic Profits. Specifically, while working as Plastic Profits, Perez sent up to 50,000 spam e-mails per day to advertise his commercial services. Plastic Profits later entered into the business of selling mortgage leads. However, the district court did not make any findings with regard to Bartok's prior experience sending spam.

In 2004, Kramer filed a multi-count complaint against Perez, Bartok, and Brown, alleging, among other things, that they sent millions of spam e-mails to CIS in violation of Iowa's anti-spam statute. Kramer sought civil damages under the statute's private cause of action. Unfortunately, Perez and Bartok produced almost nothing during discovery because Perez disassembled and sold all of AMP's computers and either discarded or erased the computers' hard drives. Perez also collected all AMP documents in his possession and shredded them. The district court determined that Bartok assisted Perez in destroying AMP's records.

Following a bench trial on the merits, the district court held that Perez and Bartok violated Iowa's anti-spam statute, concluding that more than 23.6 million spam e-mails sent to CIS "originated with" Perez and Bartok. Kramer v. Perez, 579 F. Supp. 2d 1164, 1169 (S.D. Iowa 2008). Then, the district court held Perez and Bartok jointly and severally liable to Kramer for over $236 million in statutory damages–$10 per spam e-mail transmitted–under the anti-spam statute's private cause of action. Id. at 1170-72. In doing so, the district court rejected Bartok's argument that she could

not be held individually liable for her conduct under the anti-spam statute. Id. at 1169. The district court explained that "[w]hile Bartok may not have been the 'person' hitting the 'send' button to create the spam e-mail," she was still civilly liable for conspiring with Perez to send the spam and for aiding and abetting "Perez's spamming operation." Id. at 1170. The district court emphasized the following facts to support its theory of Bartok's liability: (1) Bartok was half owner of a business whose sole source of income was predicated on illegal spamming; (2) Bartok signed Mortgageleads.tv's 2001 agreement to provide mortgage leads to Cal Capital; and (3) Bartok aided Perez in destroying AMP's records. Id.

The district court found no evidence linking Brown to the spamming operation and accordingly rejected Kramer's claim against Brown under the anti-spam statute. Id. at 1169. Moreover, the district court ruled in favor of Brown, Perez, and Bartok on all of Kramer's remaining claims,[4] holding that Kramer failed to prove the actual damages elements of those claims. Id. at 1170. Bartok subsequently filed this appeal. Perez did not appeal the district court's decision.

## II. DISCUSSION

At the heart of Bartok's appeal lies her assertion that the district court incorrectly interpreted and applied Iowa's anti-spam statute to hold her jointly and severally liable for over $236 million in statutory damages. In an appeal from a judgment following a bench trial, we review the district court's conclusions of law de novo. Speer v. City of Wynne, 276 F.3d 980, 984-85 (8th Cir. 2002). Thus, the

---

[4]In addition to his claim under the Iowa anti-spam statute, Kramer also asserted a federal RICO claim, a federal Computer Fraud and Abuse Act claim, an Iowa Ongoing Criminal Conduct Act claim, an unauthorized computer access claim, and common law claims of unfair competition, conversion, trespass, unjust enrichment, intentional interference with contract and intentional interference with prospective business advantage. Kramer, 579 F. Supp. 2d at 1170.

district court's statutory construction is subject to de novo review. Davey v. City of Omaha, 107 F.3d 587, 591 (8th Cir. 1997).

Iowa Code Chapter 714E.1 contains two key sections. First, Iowa Code section 714E.1(2) makes it unlawful "for a person to use an interactive computer service to initiate the sending of bulk electronic mail that the sender knows, or has reason to know" violates the provisions of section 714E.1(2)(a)-(e). Then, section 714E.1(3) creates private causes of action for those injured by a violation of section 714E.1(2). Bartok argues that the district court erred when it held her civilly liable to Kramer for violating section 714E.1(2) despite also finding that she was not "the 'person' hitting the 'send' button to create the spam e-mail." Kramer, 579 F. Supp. 2d at 1170. We agree.

Generally, while interpreting section 714E.1, we would "accept the decisions of the Iowa Supreme Court as the controlling precedent." HOK Sport, Inc. v. FC Des Moines, L.C., 495 F.3d 927, 934-35 (8th Cir. 2007). But, because the Iowa Supreme Court has not interpreted this statute, we must predict how the Iowa Supreme Court would do so. In re Gen. Am. Life Ins. Co. Sales Practices Litig., 391 F.3d 907, 911 (8th Cir. 2004). In making such a prediction, "we may consider relevant state precedent, analogous decisions, considered dicta, . . . and any other reliable data." Id. (quotation omitted) (alteration in original).

The Iowa Supreme Court recently explained that "[w]hen a statute . . . is plain and its meaning is clear, the rules of statutory construction do not permit courts to search for meaning beyond its express terms." Office of Consumer Advocate v. Iowa Utils. Bd., 744 N.W.2d 640, 643 (Iowa 2008). Moreover, Iowa courts "generally presume words contained in a statute . . . are used in their ordinary and usual sense with the meaning commonly attributed to them." Id.

We believe that section 714E.1(2) is plain and its meaning is clear. As discussed above, to violate this section, a person must use an "interactive computer

service" to "initiate the sending" of spam e-mail. Iowa Code § 714E.1(2). Section 714E.1(1)(e) defines "interactive computer service" as "an information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the internet, and such systems operated or services offered by a library or an educational institution." Since section 714E.1 does not define "initiate" or "send," we must apply the "accepted usage" of those terms. Office of Consumer Advocate, 744 N.W.2d at 643. According to The American Heritage College Dictionary 714 (4th ed. 2007), "initiate" means "[t]o set going by taking the first step." Moreover, "send" means "[t]o cause to be conveyed by an intermediary to a destination" or "[t]o dispatch, as by a communications medium." Id. at 1262.

After considering the above definitions within the context of the statute as a whole, we hold that Bartok cannot be held directly liable for her conduct under section 714E.1(2). The district court's findings of fact simply do not support a conclusion that Bartok used an interactive computer service to initiate the sending of spam. Kramer argues that Bartok violated section 714E.1(2) because her actions, in a broad sense, "initiated the sending" of spam. Specifically, Kramer argues that Bartok "initiated" the sending of spam by acting as a liaison between AMP and mortgage lead purchasers such as Cal Capital and by ensuring that Perez's spamming operation was profitable. As such, Kramer argues, Bartok "initiated," or took the "first step," in sending spam. Indeed, if section 714E.1(2) merely made it unlawful for "a person to initiate the sending" of spam, Kramer's argument may have some merit. However, the statute makes it unlawful for "a person *to use an interactive computer service to* initiate the sending" of spam. Iowa Code § 714E.1(2) (emphasis added). Since there is no evidence that Bartok ever used an interactive computer service to initiate the sending of spam, Bartok cannot be held liable for violating section 714E.1(2).

While the district court conceded that "Bartok may not have been the 'person' hitting the 'send' button to create the spam e-mail," Kramer, 579 F. Supp. 2d at 1170, it held Bartok civilly liable for violating section 714E.1(2) under civil conspiracy and

aiding and abetting theories.  Id.  Bartok argues that she cannot be held liable under such theories because the statute's plain text does not create liability for conspiracy and/or aiding and abetting.  Further, she argues that she cannot be held liable under common law theories of civil conspiracy and aiding and abetting because Kramer did not prove the damages elements of those claims.  We agree.

First, Bartok cannot be held liable under section 714E.1 for civil conspiracy and/or aiding and abetting because the statute's text creates no such liability.  Section 714E.1(3)(a)(2) creates a private cause of action for a spam recipient only against "a person who transmits or causes to be transmitted electronic mail in violation of [section 714E.1(2)]."  Similarly, section 714E.1(3)(b)(1) creates a private cause of action for an interactive computer service only against "a person who transmits bulk electronic mail without authority" in violation of section 714E.1(2).  We refuse to create a private cause of action for civil conspiracy and/or aiding and abetting where section 714E.1(3)'s text creates no such liability.  See Lee v. Grinnell Mut. Reinsurance Co., 646 N.W.2d 403, 407 (Iowa 2002) (explaining that a "court cannot enlarge or otherwise change the terms of the statute"); cf. Central Bank of Denver v. First Interstate Bank of Denver, 511 U.S. 164, 191 (1994) (holding that a private plaintiff could not maintain a civil aiding and/or abetting suit under a federal securities statute's private cause of action where the text of the statute did not prohibit aiding and abetting).

Further, Bartok cannot be liable under Iowa common law civil conspiracy and/or aiding and abetting theories because Kramer did not prove the actual damages elements necessary to prevail under such claims.  Under Iowa law, plaintiffs must prove actual damages to prevail under civil conspiracy and/or aiding and abetting theories of liability.  S. N.Y. Ry., Inc. v. Fort Dodge, Des Moines & S. Ry. Co., 316 N.W.2d 840, 844 (Iowa 1982) ("[U]nless actual damage has resulted from something done by one or more of the conspirators in furtherance of the object of the conspiracy, no civil action lies against anyone."); Reilly v. Anderson, 727 N.W.2d 102, 107 (Iowa 2006) (affirming jury instruction's list of elements for aiding and abetting, which

included "[t]he amount of damage"); Iowa Civil Jury Instructions 3500.4 (2004) ("In order to recover for the claim of aiding and abetting, the plaintiff must prove . . . [t]he nature and extent of damage.").  As the Iowa Supreme Court explained in Basic Chems., Inc. v. Benson, 251 N.W.2d 220, 233 (Iowa 1977):

> Courts have recognized a distinction between proof of the fact that damages have been sustained and proof of the amount of those damages. If it is speculative and uncertain whether damages have been sustained, recovery is denied.  If the uncertainty lies only in the amount of damages, recovery may be had if there is proof of a reasonable basis from which the amount can be inferred or approximated.

(quotation omitted).

Here, the district court found that "Kramer's evidence of his actual damages [was] impermissibly speculative" and, accordingly, held that "Kramer has not sufficiently proven his actual damages."  Kramer, 579 F. Supp. 2d at 1171.  Based on this holding, the district court denied all of Kramer's alternative theories of liability. Id. at 1170-71.  Thus, assuming arguendo that a person could be liable for conspiring to send and/or aiding and abetting the sending of illegal spam e-mail under Iowa common law, a  judgment against Bartok cannot stand under such theories because Kramer failed to prove the damages elements of those claims.

Bartok raises several additional issues on appeal, including her argument that the district court erred when it based its decision on deposition testimony not admitted into evidence at trial and her argument that there is insufficient evidence to sustain the $236 million judgment because only 23 e-mails (not 23.6 million e-mails) were admitted into evidence.  Since our determination that Bartok cannot be held liable for violating section 714E.1(2) is sufficient to dispose of this case, we need not address Bartok's remaining arguments.

## III.   CONCLUSION

We reverse the district court's decision to hold Bartok jointly and severally liable to Kramer for $236,480,660 in statutory damages under Iowa Code § 714E.1, and remand for proceedings consistent with this opinion.

_____